ATTORNEYS FOR APPELLANT
STACY KNIGHTEN
R. Brian Woodward
David Edgar Woodward
Woodward & Blaskovich, LLP
Merrillville, Indiana

ATTORNEYS FOR APPELLEE
EAST CHICAGO HOUSING AUTHORITY
Nicholas Aaron Snow
Harris Law Firm, P.C.
Crown Point, Indiana

ATTORNEYS FOR APPELLEE
DONNELL CALDWELL AND DAVIS
SECURITY SERVICE, LLC
Court Layne Farrell
Katherine Yvonne Gappa
Bradley Phillip Clark
Bruce Phillip Clark
Bruce P. Clark & Associates
St. John, Indiana

FILED
Dec 08 2015, 10:46 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S04-1512-CT-686

STACY KNIGHTEN,

*Appellant (Plaintiff below),*

v.

EAST CHICAGO HOUSING AUTHORITY,
Individually and d/b/a WEST CALUMET
COMPLEX, DAVIS SECURITY SERVICE,
LLC, AND DONNELL CALDWELL,

*Appellees (Defendants below).*

Appeal from the Lake Superior Court, No. 45D10-1105-CT-00096
The Honorable John R. Pera, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 45A04-1312-CT-632

**December 8, 2015**

**RUCKER, Justice.**

While on duty a security guard shot and severely injured a person with whom he was romantically involved. The injured party filed a complaint against the security guard's employer under the theory of respondeat superior. The trial court granted the employer's motion for summary judgment. Concluding there are genuine issues of material fact precluding summary disposition, we reverse the trial court's judgment.

## Facts and Procedural History

The East Chicago Housing Authority ("Housing Authority") operates the West Calumet Complex ("Complex"), a federal Housing and Urban Development property located in the city of East Chicago. The Housing Authority entered into a contract with Davis Security Services, LLC ("Davis Security") to provide security services during the years 2009 to 2011. In June 2008, Davis Security hired Donnell Caldwell as a security guard. Sometime in June or July 2010 he was assigned to work at a guard shack located at the front entrance of the Complex. As discussed in more detail later in this opinion, although the full scope of Caldwell's duties are in dispute, they at least included monitoring traffic entering the Complex.

Before his employment with Davis Security, Caldwell had been romantically involved with Stacy Knighten, a resident of the Complex. On August 7, 2010, while on duty at the guard shack, Caldwell permitted Knighten and her friend to drive his car to a liquor store. When Knighten returned, she and Caldwell argued about Knighten having spent all of his money and that she was driving while intoxicated. The argument escalated to the point that Caldwell ordered Knighten to exit his car and walk home. Caldwell entered the guard shack, retrieved his handgun, and set the traffic gate to allow incoming traffic to enter the Complex automatically. Caldwell then got into his car and drove home Knighten's friend who also lived in the Complex.

When Caldwell returned to the guard shack, Knighten was waiting for him. She angrily confronted Caldwell and the two resumed arguing. The record is unclear but apparently this confrontation occurred several yards away from the guard shack. At some point during these events Knighten damaged the entrance gate to the Complex. Further along in the confrontation Knighten turned away from Caldwell and began walking home when Caldwell drew his handgun

2

and fired a shot striking Knighten in the back. Ultimately the gunshot injury left Knighten paralyzed from the waist down.

Knighten filed a complaint for damages against the Housing Authority, Davis Security, and Caldwell alleging that during the course of his employment and while present at the Complex, Caldwell negligently discharged his firearm causing Knighten to suffer permanent injuries. Knighten's complaint also alleged liability on the part of the Housing Authority and Davis Security for negligent hiring and supervision. After conducting discovery, Davis Security and the Housing Authority filed motions for summary judgment, and Knighten filed a cross-motion for summary judgment. Following a hearing, the trial court granted summary judgment in favor of Davis Security and the Housing Authority on all claims and denied summary judgment to Knighten. She appealed challenging only the trial court's grant of summary judgment in favor of Davis Security.[1] In a memorandum decision the Court of Appeals affirmed the trial court's judgment. See Knighten v. E. Chi. Hous. Auth., 20 N.E.3d 605 (Ind. Ct. App. 2014) (Table). We now grant transfer and reverse the judgment of the trial court.

**Standard of Review**

At the outset we observe the trial court entered detailed and thoughtful findings of fact and conclusions of law in support of its judgment neither of which is required nor prohibited in the summary judgment context. City of Gary v. Ind. Bell Tel. Co., 732 N.E.2d 149, 152 (Ind. 2000). "Although specific findings aid our review of a summary judgment ruling they are not binding on this Court." Id.; see also Winchell v. Guy, 857 N.E.2d 1024, 1027 (Ind. Ct. App. 2006) ("A trial court's findings and conclusions supporting its summary judgment order offer insight into the rationale of the trial court's judgment, but they are not binding upon us." (citation omitted)). Instead, when we review a grant or denial of a motion for summary judgment, our standard of review is the same as it is for the trial court. Reed v. Reid, 980 N.E.2d 277, 285 (Ind. 2012). The moving party must show there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Id. If the moving party carries its burden, then the non-moving

---

[1] In this regard Knighten did not challenge the trial court's grant of summary judgment in favor of Davis Security on her negligent hiring and supervision claim.

3

party must present evidence establishing the existence of a genuine issue of material fact. <u>Id.</u> In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. <u>See</u> Ind. Trial Rule 56(C), (H). We construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party. <u>Reed</u>, 980 N.E.2d at 285. Further "[t]he fact that the parties have filed cross-motions for summary judgment does not alter our standard for review . . . ." <u>Id.</u> Instead, under most circumstances "we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." <u>Id.</u> However, in this case Knighten does not appeal the trial court's denial of her own motion for summary judgment. Rather she challenges only the trial court's grant of summary judgment in favor of Davis Security. Thus our review is limited to this motion only.

## Discussion

"To prevail on a claim of negligence the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." <u>Kroger Co. v. Plonski</u>, 930 N.E.2d 1, 6 (Ind. 2010). "Absent a duty there can be no negligence or liability based upon the breach." <u>Id.</u>

In this case Knighten's negligence claim against Davis Security is premised on the doctrine of respondeat superior, under which an employer who is not liable because of its own acts can be held liable "for the wrongful acts of [its] employee which are committed within the scope of employment." <u>Sword v. NKC Hosps., Inc.</u>, 714 N.E.2d 142, 148 (Ind. 1999) (quoting <u>Stropes v. Heritage House Childrens Ctr.</u>, 547 N.E.2d 244, 247 (Ind. 1989)). And in order for an employee's act to fall "within the scope of employment," the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business. <u>Celebration Fireworks, Inc. v. Smith</u>, 727 N.E.2d 450, 453 (Ind. 2000). This Court has observed, "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." <u>Barnett v. Clark</u>, 889 N.E.2d 281, 284 (Ind. 2008) (emphasis omitted) (quoting Restatement (Third) of

4

Agency § 7.07(2) (Am. Law Inst. 2006)).[2]  Nonetheless, "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself."  Barnett, 889 N.E.2d at 284 (quoting Stropes, 547 N.E.2d at 247).

Here, Davis Security asserts that as a security guard assigned to work at the guard shack "Caldwell's duties at said position included traffic control for the West Calumet Complex, and he was only permitted to monitor traffic entering the complex to ensure that only tenants and other authorized individuals entered the property."  Br. of Appellee Davis Security at 2.  In support of this assertion Davis Security relies for the most part on Caldwell's affidavit submitted in support of its motion for summary judgment which declared in relevant part:  "This position [security guard at the Complex] only allowed me to monitor traffic entering the complex and make sure that only tenants and other authorized individuals entered the property."  App. at 65.  According to Davis Security the evidence clearly demonstrates that "Caldwell, who was away from his post, performing unauthorized acts with a purely personal motive, was not acting within the course and scope of his employment at the time of the subject shooting."  Br. of Appellee Davis Security at 7.

We first observe there is some tension—if not outright conflict—between Davis Security's assertion that "Caldwell's duties . . . *included* traffic control" and its assertion, as well as Caldwell's representation, that Caldwell was "*only* permitted to monitor traffic."  To be sure, if the Trial Rule 56 materials presented to the trial court unequivocally showed that Caldwell had no responsibility other than traffic monitoring, then one would indeed be hard pressed to explain how shooting Knighten was somehow in furtherance of Davis Security's business.  But, Davis Security's contention that Caldwell's duties *included* traffic monitoring implies that his responsibilities were more expansive. And the contract entered between Davis Security and the Housing Authority amplifies this point.  It declared in relevant part:

---

[2] The Court noted that Comment c to Section 7.07 illustrated this principle by the following example: "an employee driving a truck in the scope of employment, and who becomes irate at another motorist, leans out the truck cab, and shoots the driver whose conduct enraged him.  While the shooting occurred in the midst of the employee's duties of employment, the shooting 'is not within the scope of employment.'"  Barnett, 889 N.E.2d at 284 (quoting Restatement (Third) of Agency § 7.07 cmt. c).

3. SECURITY OFFICER SERVICES TO BE PROVIDED. [Davis Security] shall provide security services as determined by [Housing Authority] and under the terms and conditions set forth in this agreement as follows:

1. [Davis Security] shall assign its security officers to provide theft prevention and detection service. [Davis Security] shall staff the premises as necessary to effectively protect the premises.

2. The security officers shall be properly and thoroughly trained to accomplish at least the following: to deter or minimize the risk of loss due to theft of property by their employees, or visitors; to deter or mitigate the risk of loss due to the unruly, threatening, or disruptive conduct of persons present on the premises; to investigate, and conduct inquiries into any known or suspected occurrences of any such loss. . . [Davis Security]'s Officers shall perform these services in a lawful manner.

App. at 187-88. Also, although not included within the express terms of the contract itself, the record shows that a memorandum of understanding between Davis Security and the Housing Authority—executed contemporaneously with the contract—declared in relevant part, "12 Hours (6:00 p.m. to 6:00 a.m.)/365 days *Armed Security* at: West Calumet Complex's Guard Booth . . . ." App. at 38 (emphasis added).

We note it is not readily apparent why an armed security guard is necessary if his sole duty consists of monitoring traffic. In any case, whether Davis Security authorized Caldwell to carry a weapon on duty is itself a matter in dispute. Caldwell's supervisor testified by way of deposition that even though the contract required Davis Security to have an armed employee at the guard shack, the supervisor instructed Caldwell that he should not be armed. App. at 56. However the supervisor's testimony is at odds with Caldwell's answer of "no" to the following interrogatory: "Were you given any warnings, instructions and/or company policies, either written or oral, advising you that you were not to carry a firearm while working at the West Calumet Complex[?]" App. at 73. The record also shows that five months before the act giving rise to this lawsuit Davis Security notified Caldwell that his handgun permit had expired. He was warned:

6

> It is company policy that all employees working sites that require the carrying of a weapon be properly licensed and that their employee file has such documentation for verification. Please be advised if such documentation is not received by this office . . . you will not be allowed to carry a weapon and may be possibly removed from your work schedule.

App. at 185. The record is unclear whether Caldwell provided such documentation.

If, as Davis Security alleges, it prohibited Caldwell from possessing a handgun while serving as a security guard then that fact would certainly undermine the notion that he used his handgun in furtherance of his employer's business. On the other hand if Caldwell were required to be armed on duty, then the use of his firearm could very well have been necessary. The record shows that an apparently intoxicated Knighten was at least engaged in disruptive conduct while present on the premises. In fact she damaged the gate to the Complex at some point. Whether Caldwell fired his weapon in an effort "to deter or mitigate the risk of loss," App. at 187, as a result of Knighten's behavior or whether Caldwell—in his words—"did not fire [his] gun in any official capacity, or as a security guard at the West Calumet Complex," App. at 66, are questions that must be resolved by the factfinder.

Davis Security insists that at the time of the shooting Caldwell had left his post in spite of being "required to remain in the guard shack at all times." Br. of Appellee at 2. But this fact is also in dispute. A reasonable reading of the contract between the Davis Security and the Housing Authority suggests that Caldwell out of necessity would have to abandon his post at the guard shack under some circumstances, including "to deter or mitigate the risk of loss due to the unruly, threatening, or disruptive conduct of persons present on the premises; to investigate, and conduct inquiries into any known or suspected occurrences of any such loss. . . ." App. at 187.

In the end, the scope and extent of Caldwell's duties and responsibilities as an employee of Davis Security, and whether in discharging his weapon Caldwell engaged in conduct consistent with his duties and responsibilities, and thus whether this act was done "to an appreciable extent, to further his employer's business[,]" Bushong v. Williamson, 790 N.E.2d 467, 473 (Ind. 2003) (quoting Celebration Fireworks, 727 N.E.2d at 453), are matters that cannot

7

be resolved by summary disposition. In fact "[i]t is well established that whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." Walgreen Co. v. Hinchy, 21 N.E.3d 99, 107 (Ind. Ct. App. 2014) (citing Trinity Lutheran Church, Inc. v. Miller, 451 N.E.2d 1099, 1102 (Ind. Ct. App. 1983)).

## Conclusion

We reverse that portion of the trial court's order granting summary judgment in favor of Davis Security based on Knighten's respondeat superior claim. This cause is remanded for further proceedings.

Rush, C.J., and Dickson, David and Massa, JJ., concur.