

**FILED**

Dec 09 2016, 8:44 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

D. Michael Allen
Jared S. Sunday
Mallor Grodner LLP
Bloomington, Indiana

ATTORNEY FOR APPELLEE,
IDEAL HEATING AIR
CONDITIONING AND
REFRIGERATION, INC.

Jon K. Stowell
The Cincinnati Insurance
Company
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas Hudgins and Sheila Hudgins, | December 9, 2016 |
| *Appellants-Plaintiffs,* | Court of Appeals Case No. 49A02-1505-CT-384 |
| v. | Appeal from the Marion Superior Court |
| Brian Bemish, Ideal Heating Air Conditioning and Refrigeration, Inc., | The Honorable Michael D. Keele, Judge |
| *Appellees-Defendants.* | Trial Court Cause No. 49D07-1309-CF-35631 |

**Pyle, Judge.**

## Statement of the Case

Appellants-Plaintiffs, Thomas Hudgins ("Hudgins") and Sheila Hudgins

("Sheila") (collectively, "the Hudginses"), appeal the trial court's grant of

summary judgment to Appellee-Defendant, Ideal Heating Air Conditioning and Refrigeration, Inc. ("Ideal"), who was the employer of Brian Bemish ("Bemish").[1] This case originates from the Hudginses' complaint, alleging negligence, loss of consortium, and property damage based on a collision that occurred when Bemish drove his Ideal work vehicle into a line of vehicles stopped at a traffic light. The Hudginses alleged that Ideal was vicariously liable under respondeat superior and liable based on negligent hiring and retention under Restatement (Second) of Torts § 317.

[2]     The Hudginses argue that the trial court erred by granting summary judgment in favor of Ideal because there remain genuine issues of material fact regarding their claims against Ideal. We conclude that, based on the evidence designated to the trial court, there are conflicting facts or conflicting inferences that can be drawn as to whether Bemish was acting in the scope of his employment with Ideal at the time of the accident. Additionally, we conclude that Ideal has not met its initial burden on its motion for summary judgment on the Hudginses' negligent hiring and retention claim because it has not demonstrated the absence of a genuine issue of material fact regarding that claim and, instead, has merely alleged that the Hudginses have failed to present evidence showing that Ideal was liable under this claim. Accordingly, we reverse the trial court's judgment and remand for further proceedings.

---

[1] Ideal moved for summary judgment on its own behalf. Bemish is not part of this appeal. However, because Bemish was a party below, he is also listed as a party on appeal. *See* Ind. App. R. 17(A).

We reverse and remand.

# Issue

Whether the trial court erred by granting Ideal's motion for summary judgment.

# Facts

The facts most favorable to the Hudginses, the non-moving party in this summary judgment, are set forth herein.

In 2011, Bemish was an employee of Ideal and worked as an installer. As part of Bemish's employment, Ideal supplied Bemish with a company truck ("the Ideal Truck"). Ideal's written policy on company vehicles contained in its Employee Handbook provided, in relevant part, that Ideal's "[v]ehicles are to be used solely for work related business." (App. 117). The company vehicle policy also provided that "[d]uring non-working hours, company vehicles may be driven home and kept on the employee[']s property or be returned to the shop at the end of the day." (App. 117). Bemish drove his Ideal Truck home every day and stored it at his premises. Ideal paid for maintenance and gas for company-issued vehicles.

Ideal required Bemish to sign a "Vehicle Usage Policy," which included a list of "requirements[.]" (App. 96). In relevant part, the Vehicle Usage Policy provided that "[t]he employee [wa]s not to use the company vehicle for any personal use" and that "[t]he employee [wa]s to use the company vehicle . . .

solely for company business of Ideal Heating A/C & Refrigeration Inc." (App. 96). Bemish used the Ideal Truck to haul materials and tools to job sites.

[7] On September 21, 2011, Bemish was assigned to work a project for Ideal at a job site in Valparaiso, Indiana. That morning, he drove the Ideal Truck and picked up his foreman, Adam Ramser ("Ramser"), at his house in Indianapolis. Bemish and Ramser had previously loaded the Ideal Truck with equipment at the Ideal shop. Bemish drove to the job site in Valparaiso, where he and Ramser performed work for Ideal over the next few days.

[8] On September 23, 2011, Bemish and Ramser worked for a few hours at the job site in Valparaiso. Bemish then drove the pair back to Indianapolis in the Ideal Truck. Upon arriving in Indianapolis around 3:00 p.m., Bemish dropped Ramser off at his house near 34th Street and Georgetown Road and stayed for a few minutes. Thereafter, Bemish, while driving the Ideal Truck near 16th Street and Georgetown Road, collided with a line of vehicles stopped at a traffic light ("the Collision"). The impact from the Ideal Truck caused a chain reaction collision that included Hudgins, who was riding his motorcycle. Hudgins was injured in the Collision. At the time of the accident, Bemish had several ladders on the Ideal Truck, and one of these ladders, which had Ideal's name on it, fell onto the road at the site of the Collision.

[9] Bemish fled the scene of the Collision in the Ideal Truck, drove another few blocks, and was involved in a second collision near 16th Street and Lynhurst Drive when he struck another vehicle stopped at a traffic light ("the second

collision"). After Speedway Police officers arrived on the scene of the second collision, they removed Bemish from the Ideal Truck and noticed that he appeared dazed and had difficulty keeping his eyes open. Bemish admitted to the officers that, earlier that day, he had smoked the synthetic drug, spice, on the side of the road near 34th Street and Georgetown Road. The officers arrested Bemish. Thereafter, Ideal terminated his employment.

[10] On September 20, 2013, the Hudginses filed a complaint against Bemish and Ideal and raised claims of negligence, loss of consortium, and property damage. The Hudginses alleged that Bemish was negligent in causing the Collision that resulted in Hudgins' injuries. In their negligence claim against Ideal, the Hudginses alleged that Ideal was liable for Bemish's acts based on: (1) the theory of respondeat superior, which can impose liability on an employer when the employee has inflicted harm while acting within the scope of employment; and (2) negligent hiring and training under the Restatement (Second) of Torts § 317 ("Restatement § 317"), which can impose liability on an employer for acts of an employee acting outside the scope of employment when certain circumstances are met.[2]

[11] In July 2014, Ideal moved for summary judgment. Ideal's designated evidence consisted of the Hudginses' complaint and an affidavit from Ideal's President, David Gooderum ("Gooderum"). In his affidavit, Gooderum acknowledged

---

[2] The Hudgins also alleged that Ideal was liable under a theory of negligent entrustment of a vehicle. Neither party mentions or discusses this theory on appeal.

that Bemish was an employee of Ideal at the time of the Collision and that Ideal had given Bemish permission to drive the Ideal Truck to his house. Gooderum, however, averred that, at the time of the Collision, Bemish "was driving the company vehicle on his commute home after ending his work shift for Ideal" and that he "was not performing any task or activity relating to his employment for Ideal Heating while driving the company vehicle home." (App. 34-35). Relying on the averments in Gooderum's affidavit, Ideal argued that it was entitled to summary judgment under the respondeat superior theory of liability because the facts were "undisputed" that Bemish was not acting within the scope of his employment. (App. 22).

[12] Ideal also asserted that summary judgment should be granted with respect to the Hudginses' negligent hiring/retention claim. Ideal acknowledged that Restatement § 317 imposes a duty on an employer to exercise reasonable care to control an employee acting outside the scope of employment under certain circumstances, but it asserted that it "had no actual or constructive knowledge of any information which would show a propensity of Bemish to commit the tortious acts which led to this suit." (App. 22). Ideal did not designate any specific evidence to support its assertion.

[13] Ideal also argued, in regard to this Restatement § 317 claim, that the trial court should consider the relationship between the parties, the reasonable foreseeability of harm to Hudgins as the victim, and public policy concerns to determine whether a duty of care even arose. It contended that, given these considerations, it "had no duty to the plaintiffs because they were not patrons of

Ideal Heating and because Ideal Heating could not have foreseen the harm." (App. 24).

[14] In their summary judgment response, the Hudginses argued that Ideal's motion for summary judgment was inappropriate because: (1) Bemish had not yet responded to their discovery requests; (2) there were issues of material fact regarding whether Bemish was acting within the scope of his employment at the time of the Collision; (3) Indiana had adopted the Restatement § 317, which, under certain conditions, imposed a duty on an employer when an employee was using an employer's chattel or vehicle outside the scope of his employment; and (4) Ideal had a duty to Hudgins because the danger posed to drivers by a driver under the influence of drugs, such as Bemish, was foreseeable to Ideal.

[15] The Hudginses first argued that the trial court should deny Ideal's summary judgment motion because "[t]he Indiana Supreme Court ha[d] recognized that it is generally improper for a court to grant summary judgment while reasonable discovery requests that bear on issues material to the motion are still pending." (App. 39). The Hudginses designated evidence to show that they had served interrogatories on Bemish on March 6, 2014, but they had not yet received his response as of the date of their summary judgment response filing, which was September 5, 2014. They also pointed to an interrogatory question that specifically asked Bemish whether he was doing work-related activity at the time of the collision.

[16] Additionally, in regard to Ideal's respondeat superior argument, the Hudginses argued that Ideal's "self-serving affidavit" claiming that Bemish was not acting within the scope of his employment with Ideal conflicted with Ideal's Employee Handbook and its Vehicle Usage Policy, both of which indicated that the Ideal Truck was to be used for company purposes only.[3] (App. 45). The Employee Handbook also showed that installers such as Bemish used company vehicles to haul tools to various worksites. The Hudginses also designated Ideal's Employee Handbook to show that Ideal's work hours were Monday through Friday, 7:00 a.m. or 7:30 a.m. to 3:30 p.m. or 4:00 p.m., which meant that the Collision which occurred around 3:07 p.m., was within established work hours. The Employee Handbook also provided that an employee could be paid for travel time outside of Marion County ("Whether or not travel time [wa]s to be paid w[ould] be determined by the project manager on a job-to-job basis.") and for fuel used when working on a job site outside of Marion County ("Fuel required for transportation from the Marion county line to job assignments outside of Marion County will be reimbursed by the company.") (App. 118, 119). Additionally, the Hudginses designated the police report from the Collision and the second collision, which showed that Bemish was hauling Ideal's ladders at the time of the Collision. Thus, the Hudginses argued that there were genuine issues of material fact regarding whether Bemish was acting within the scope of his employment at the time of the Collision.

---

[3] The Hudgins designated both of these documents as evidence, among other documents.

[17] The Hudginses also argued that Ideal was not entitled to summary judgment on their negligent hiring/retention claim because Ideal had not demonstrated the absence of a material fact on that specific claim. The Hudginses argued that the trial court should reject Ideal's lack of duty argument because it "c[ould] not seriously be argued that the danger to other drivers posed by an intoxicated employee driving a company-owned vehicle was unforeseeable to Ideal." (App. 48).

[18] Thereafter, Ideal filed a reply to the Hudginses' summary judgment response. Ideal argued that Bemish's lack of response to the Hudginses' interrogatories should not preclude the trial court from entering summary judgment in Ideal's favor because there was no genuine issue of material fact regarding whether Bemish was acting within the scope of his employment. As supplemental designated evidence, Ideal attached a copy of Bemish's deposition taken in another lawsuit filed against Bemish and Ideal by one of the other motorists who had been injured in the Collision. Ideal asserted that Bemish's deposition testimony from this other case would "negate[]" the Hudginses' "hope" that Bemish's interrogatory answers would "counter the affidavit of [Ideal's President] David Gooderum." (App. 126).

[19] Ideal acknowledged that Bemish had testified in his deposition that he understood that he was acting within the course and scope of his employment when he dropped Ramser off at his house and was driving home. Ideal, however, argued that Bemish's deposition—in which he testified that he understood that he was to use the Ideal Truck for "[b]usiness use only" and

testified that, at the time of the Collision, he intended to "go home" and park the Ideal Truck at his house until he went to work on Monday—"provide[d] support for Ideal Heating's argument that [Bemish] was acting outside the scope of his employment at the time of the accident." (App. 128). Ideal contended that the deposition showed that Bemish was "solely commuting home from work," which, it asserted, was an act that "Indiana courts have continuously held is outside the scope of employment." (App. 128) (citing *Dodson v. Carlson*, 14 N.E.3d 781, 783-84 (Ind. Ct. App. 2014), *trans. denied*). Ideal acknowledged that there was an exception to this rule, but argued that the Hudginses had "failed to point to any evidence to contradict Ideal Heating's conclusion that Bemish's acts fell outside the scope of employment." (App. 131) (upper case changed to lower case). Finally, Ideal attempted to counter the Hudginses' designated evidence regarding the fact that the Collision had occurred during Ideal's set work hours by pointing to Bemish's pay records that were attached to his deposition. Ideal contended that Bemish's deposition testimony and his pay records showed that he was paid on an hourly basis and had not received compensation for the time period when the Collision had occurred.

[20] In regard to the Hudginses' negligent hiring/retention claim under Restatement § 317, Ideal argued that it was not liable because the Hudginses had failed to present any evidence to support such a claim. Ideal also argued that it was not liable because Bemish's actions and the harm caused by him were not foreseeable.

[21] Subsequently, the Hudginses filed a summary judgment surreply to address Ideal's two additional items of designated evidence that it had included in its reply. The Hudginses also requested a continuance so that they could depose Ramser. They contended that the deposition was necessary to address the newly designated evidence introduced by Ideal.[4] The Hudginses argued that Bemish's deposition, which Ideal had designated as additional evidence, merely provided further support for the Hudginses' argument regarding the existence of disputed material facts because Bemish had testified that he believed that he was acting within the scope of his employment with Ideal at the time of the Collision. The Hudginses also argued that Bemish was not merely going home, but he was returning from an out-of-county job site, which Ideal's company policies treated differently than a mere commute home. The Hudginses asserted that Gooderum's affidavit averments were "insufficient to conclusively show that Defendant Bemish was not acting within the course and scope of his employment." (App. 162).

[22] The parties agreed that the Hudginses should be allowed to depose Ramser. Following that deposition, the Hudginses filed a supplemental brief in support of their opposition to Ideal's summary judgment motion and designated Ramser's deposition as further evidence. The Hudginses contended that

---

[4] Specifically, the Hudgins wanted to depose Ramser because Ideal had not previously identified Ramser as someone with knowledge of the incident. Additionally, the Hudgins had learned for the first time from Bemish's deposition that Ramser was with Bemish immediately before the Collision and that Ramser had provided Bemish with the synthetic drug, spice, two days before the Collision.

Bemish's act of driving partially benefitted Ideal and that there was a question of fact regarding whether Bemish was acting within the scope of his employment and that this question should be decided by a jury. The Hudginses also argued that Ideal was not entitled to summary judgment on their Restatement § 317 claim because Ideal knew of the necessity and opportunity to exercise control over an employee's use of drugs and alcohol and that Ideal had done so by including policies in its Employee Handbook that prohibited such use when driving a company vehicle or while on company business.

[23] In reply to the Hudginses' supplemental brief, Ideal filed another memorandum in support of its summary judgment motion. Ideal argued that it did not receive any benefit from Bemish driving home or transporting Ramser to and from the job site. It contended that Bemish had already completed his work-related tasks and was merely driving home at the time of the Collision, thereby taking his actions outside the scope of his employment.

[24] The trial court held a summary judgment hearing on April 17, 2015. Thereafter, the trial court issued an order in which it summarily granted Ideal's summary judgment motion and entered judgment as a final judgment. The Hudginses now appeal.[5]

---

[5] While this appeal was pending, the Hudgins and Ideal engaged in appellate mediation.

# Decision

The Hudginses argue that the trial court erred by granting summary judgment to Ideal.

Our standard of review for summary judgment cases is well settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the [non-movant's] claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (citing *Hughley,* 15 N.E.3d at 1003). Unlike federal practice, in Indiana, a moving party is *not* entitled to summary judgment where it merely asserts that the opposing party lacks evidence on an element to prove its claim. *Hughley*, 15 N.E.3d at 1003. Instead, our Courts "impose a more onerous burden" and require a moving party "to affirmatively 'negate an opponent's claim.'" *Id.* (quoting *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind. 1994)). Only after the moving party carries its burden is the non-moving party then required to present evidence establishing the existence of a genuine issue of material fact. *Knighten*, 45 N.E.3d at 791.

"In deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court." *Knighten,* 45 N.E.3d at 791 (citing Ind. Trial Rule 56(C), (H)). Additionally, "[w]e construe all factual inferences in favor of the non-moving party and resolve all doubts regarding the existence of a material issue against the moving party." *Id.* We must carefully review a decision on summary judgment to ensure a party is not improperly denied his day in court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001). "Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of over-kill in its use." *Southport Little League v. Vaughan*, 734 N.E.2d 261, 269 (Ind. Ct. App. 2000), *trans. denied.* Indeed, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004.

Here, the Hudginses filed their complaint against Ideal and argued that Ideal, as employer of Bemish, was liable to the Hudginses for Bemish's negligent act of injuring Hudgins during the Collision. The Hudginses' negligence claim against Ideal was premised on the theories of: (1) respondeat superior; and (2) negligent hiring/retention under Restatement § 317.

When Ideal filed its motion for summary judgment, it set forth two arguments as to why it believed that it was not liable to the Hudginses. The trial court granted summary judgment to Ideal by entering a general judgment and did not enter any specific findings. Thus, the trial court apparently entered summary judgment based on Ideals' arguments.

[30] On appeal, the Hudginses argue that the trial court's general judgment granting Ideal's motion for summary judgment cannot be affirmed because neither of Ideal's arguments support a grant of summary judgment in Ideal's favor. Specifically, the Hudginses argue that: (1) there are genuine issues of material fact regarding whether Bemish was acting within the scope of his employment at the time of the Collision that preclude the entry of summary judgment; and (2) Ideal did not demonstrate the absence of a material fact on the Hudginses' claim under Restatement § 317. We will review each argument in turn.

## 1. Respondeat Superior – Acting within Scope of Employment

[31] The Hudginses argue that the trial court erred by granting summary judgment to Ideal on their respondeat superior claim because "factual issues . . . remain concerning whether Bemish was acting in the scope of his employment at the time of the . . . Collision." (The Hudginses' Br. 8). Specifically, the Hudginses contend that the trial court erred by determining that Bemish's act of driving the Ideal Truck at the time of the Collision was outside the scope of his employment and that, therefore, Ideal was not vicariously liable for Bemish's actions.

[32] "Respondeat superior is the applicable tort theory of vicarious liability." *Sword v. NKC Hosps., Inc.*, 714 N.E.2d 142, 148 (Ind. 1999). "Under respondeat superior, an employer, who is not liable because of his own acts, can be held liable 'for the wrongful acts of his employee [that] are committed within the scope of employment.'" *Id.* (quoting *Stropes v. Heritage House Childrens Ctr.*, 547

N.E.2d 244, 247 (Ind. 1989), *reh'g denied*). Our Indiana Supreme Court has explained that:

> [I]n order for an employee's act to fall "within the scope of employment," the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business. *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000). This Court has observed, "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008) (emphasis omitted) (quoting Restatement (Third) of Agency § 7.07(2) (Am. Law Inst. 2006)). Nonetheless, "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself." *Barnett*, 889 N.E.2d at 284 (quoting *Stropes*, 547 N.E.2d at 247).

*Knighten*, 45 N.E.3d at 791-92 (footnote omitted). "[I]t is well established that whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Id.* at 794 (citation and internal quotation marks omitted). *See also Gullett by Gullett v. Smith*, 637 N.E.2d 172, 174 (Ind. Ct. App. 1994), *trans. denied*; *State v. Gibbs*, 336 N.E.2d 703, 705 (Ind. Ct. App. 1975).

[33] Our supreme court has held that "an employee on his way to work is *normally* not in the employment of the corporation." *Biel, Inc. v. Kirsch*, 161 N.E.2d 617, 618 (Ind. 1959) (emphasis added). *See also Dodson v. Carlson*, 14 N.E.3d 781, 783 (Ind. Ct. App. 2014) (referring to this general rule in *Biel* as the "going and

coming" rule and applying the rule to an employee driving home), *trans. denied*. However, our Court has explained that "[t]he use of the qualifying word 'normally' [in *Biel*] merely allows for an exception to the general rule for those instances where the employee is not just going to work, but also performing an errand for or otherwise providing some service or benefit to the company, *other than merely showing up for work.*" *Dillman v. Great Dane Trailers, Inc.*, 649 N.E.2d 665, 668 (Ind. Ct. App. 1995) (emphasis in original). Thus, "[t]he critical inquiry is . . . whether the employee is in the service of the employer." *Warner Trucking, Inc. v. Carolina Cas. Ins. Co.*, 686 N.E.2d 102, 105 (Ind. 1997). "Even though an employee violates the employer's rules, orders, or instructions, or engages in expressly forbidden actions, an employer may be held accountable for the wrongful act if the employee was acting within the scope of employment." *Id.*

[34]     "To obtain summary judgment in Indiana, a moving party must demonstrate the absence of any genuine issue of material fact on at least one element of the opposing party's claim." *Siner*, 51 N.E.3d at 1185-86. Because Ideal moved for summary judgment, it had the burden of "affirmatively negating" at least one element of the Hudginses' respondeat superior claim. *See Id.* at 1188.

[35]     On summary judgment, Ideal set forth to negate the element regarding whether Bemish was acting within the scope of employment. In order for Ideal to have summary judgment granted in its favor, it was required to designate evidence demonstrating that this element of the Hudginses' respondeat superior claim was not satisfied. *See Jarboe*, 644 N.E.2d at 123. Relying on the "going and

coming" rule in *Biel*, Ideal argued that it was "undisputed" that Bemish was not acting within the scope of his employment at the time of the Collision because he was driving the Ideal Truck to his home and was not performing an activity or service to benefit Ideal. (App. 22). To support this assertion, Ideal designated, among other evidence, the affidavit of its president, Bemish's deposition taken in another negligence cause, and Ideals' Employee Handbook. Ideal contends that its designated evidence satisfied its initial summary judgment burden, arguing that this designated evidence affirmatively showed that Bemish was not acting within the scope of his employment at the time of the Collision. We disagree.

[36] While Gooderum's affidavit averred that, at the time of the Collision, Bemish was "commut[ing] home after ending his work shift" and "was not performing any task or activity relating to his employment for Ideal[,]" Ideal's other designated evidence conflicted with that averment. (App. 34, 35). Specifically, Bemish's deposition contains testimony that he believed that he was acting within the scope of his employment when he caused the Collision that injured Hudgins. In his deposition, he also testified that he used the Ideal Truck to haul materials and that his driving of the Ideal Truck was for business use only. Additionally, Ideal's Employee Handbook provides that company vehicles, such as the Ideal Truck, were to be used "solely for work related business." (App. 223). The Employee Handbook also revealed that employees, such as Bemish, who were given a company vehicle were required to either drive the

company vehicle to their home and keep it on their property or to return it to the shop. (App. 233).

[37] Considering the facts most favorable to the Hudginses, along with all reasonable inferences therefrom, we conclude the trial court erred in granting Ideal's motion for summary judgment. Because Ideal's own designated evidence is conflicting and establishes that there is a genuine issue of fact regarding whether Bemish was performing an activity or service to benefit Ideal, it did not meet its burden of affirmatively negating the acting within the scope of his employment element of the Hudginses' respondeat superior claim. *See, e.g.*, *Siner*, 51 N.E.3d at 1189 (reversing the trial court's grant of summary judgment to the defendants where their "*own* designated evidence establishe[d] a genuine issue of material fact" and, thereby, failed to meet their summary judgment burden of affirmatively negating an element of the plaintiff's claim) (emphasis in original).

[38] Given the existing question of fact regarding whether Bemish's act of driving the Ideal Truck at the time of the Collision was within the scope of his employment, we reverse the trial court's grant of summary judgment on the Hudginses' respondeat superior claim and remand for further proceedings. *See Knighten*, 45 N.E.3d at 794 (reversing the trial court's grant of summary judgment on the plaintiff's respondeat superior claim because there were questions of fact regarding whether the employee's actions were within the scope of employment); *Gullett*, 637 N.E.2d at 175 (reversing the trial court's grant of summary judgment to the employer because there was a genuine issue

of fact regarding whether the employee was acting within the scope of his employment); *Sony DADC U.S. Inc. v. Thompson*, 56 N.E.3d 1171, 1180 (Ind. Ct. App. 2016) (reversing the trial court's grant of summary judgment where there was a genuine issues of material fact as to whether the employee was acting in the scope of his employment at the time of the accident), *trans. denied.  See also Dillman*, 649 N.E.2d at 668 (explaining that "if there are conflicting facts, or conflicting inferences to be drawn from the facts, regarding why the motorist was on the road at the time of the accident, then the scope of employment determination falls upon the fact-finder"); *Gibbs*, 336 N.E.2d at 705 (affirming a judgment that an employee was acting within the scope of his employment when driving a company vehicle to his home).[6]

## 2.  Restatement (Second) of Torts § 317 – Negligent Hiring/Retention

[39] The Hudginses next argue that the trial court erred by granting summary judgment to Ideal on their negligent hiring/retention claim under Restatement § 317.  Specifically, they argue that "genuine issues of material fact remain as to whether Ideal should be held liable for [Bemish's] acts outside of the scope of his employment."  (The Hudginses' Br. 13).

[40] "Indiana recognizes the tort of negligent hiring and retention of an employee" and has adopted Restatement § 317 as the standard in regard to such a claim.

---

[6] Even if Ideal's own designated evidence had not conflicted, reversal of summary judgment would still be required because the Hudgins' designated evidence showed that there was a genuine issue of fact regarding whether Bemish was acting within the scope of his employment.

*Sandage v. Bd. of Comm'rs of Vanderburgh Cty.*, 897 N.E.2d 507, 512 (Ind. Ct. App. 2008) (citing *Konkle v. Henson*, 672 N.E.2d 450, 460 (Ind. Ct. App. 1996)). Restatement § 317, provides, in relevant part:

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> (a) the servant
>
> * * * * *
>
> > (ii) is using a chattel of the master, and
>
> (b) the master
>
> > (i) knows or has reason to know that he has the ability to control his servant, and
>
> > (ii) knows or should know of the necessity and opportunity for exercising such control.

"Under the Restatement [§ 317], to determine whether an employer is liable for negligent hiring or retention of an employee, the court must determine if the employer exercised reasonable care." *Sandage*, 897 N.E.2d at 512. "In negligence cases, summary judgment is 'rarely appropriate.'" *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004) (quoting *Tibbs v. Huber, Hunt & Nichols, Inc.*, 668 N.E.2d 248, 249 (Ind. 1996)). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective

reasonable person—one best applied by a jury after hearing all of the evidence."
*Id.*

[41]  In order for Ideal to obtain summary judgment in its favor on this negligent hiring/retention claim, it was required to designate evidence to affirmatively negate or demonstrate that one of these elements of Restatement § 317 was not satisfied.  *See Siner*, 51 N.E.3d at 1188; *Jarboe,* 644 N.E.2d at 123.  In *Jarboe*, our Indiana Supreme Court explained the importance of the parties' burden in a summary judgment proceeding:

> The burden imposed at trial upon the party with the burden of proof on an issue is significantly different from that required of a non-movant in an Indiana summary judgment proceeding. Under Indiana's standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence.
>
> * * * * *
>
> Merely alleging that the plaintiff has failed to produce evidence on each element of [his cause of action against the defendant] is insufficient to entitle the defendant to summary judgment under Indiana law.

*Jarboe*, 644 N.E.2d at 123.

[42]  Accordingly, our task on appeal is not to determine whether the Hudginses have proven each element of their Restatement § 317 claim; instead, we must determine whether Ideal has adequately met its initial burden of proving an absence of any genuine issue of material fact or of affirmatively negating at least

one element with respect to the Hudginses' Restatement § 317 claim. *See Jarboe*, 644 N.E.2d at 123; *Siner*, 51 N.E.3d at 1188.

[43] On summary judgment, Ideal acknowledged that Restatement § 317 imposes a duty on an employer to exercise reasonable care to control an employee acting outside the scope of employment under certain circumstances, but it asserted that it "had no actual or constructive knowledge of any information which would show a propensity of Bemish to commit the tortious acts which led to this suit." (App. 22). Ideal did not, however, designate any specific evidence to support its assertion. In its later summary judgment reply, it argued that it was not liable under Restatement § 317 because the Hudginses had failed to present any evidence to support such a claim.

[44] On appeal, Ideal asserts that "no genuine issue of material fact exists as to whether Ideal knew or should have known Bemish's use of the Ideal truck posed an unreasonable risk of harm" because "[t]he Hudgins offer[ed] no evidence to show [that] Ideal had any knowledge of the unreasonable risk posed by Bemish prior to the accident." (Ideal's Br. 17).

[45] Ideal's mere assertion that the Hudginses would not be able to prove the necessary elements of their Restatement § 317 claim does not entitle it to summary judgment. "Summary judgment is proper where the movant has shown, through its designated evidence, that there is no genuine issue of as to any material fact and that it is entitled to judgment as a matter of law." *Williams v. Ind. Rail Road Co.*, 33 N.E.3d 1043, 1062 (Ind. Ct. App. 2015), *reh'g*

*denied*, *trans. denied*. *See also Hughley*, 15 N.E.3d at 1003. Because Ideal did not designate any specific evidence to affirmatively negate an element of the Restatement § 317 claim, it failed to meet its initial summary judgment burden. *See, e.g.*, *Siner*, 51 N.E.3d at 1189 (holding that the trial court erred by granting summary judgment where the defendants did not affirmatively negate the plaintiffs' claim). Accordingly, the trial court erred by granting summary judgment on this claim, and we reverse the trial court's judgment and remand for further proceedings.[7]

[46] Reversed and remanded.

Kirsch, J., and Riley, J., concur.

---

[7] Ideal also continues to argue that we should consider the factors of *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991)—the relationship between the parties; the reasonable foreseeability of harm; and public policy concerns—to determine whether a duty of care even arose. It contends that, given these considerations, it "had no duty to the plaintiffs because they were not patrons of Ideal Heating and because Ideal Heating could not have foreseen the harm." (App. 24). Our Indiana Supreme Court has recently explained that a court need not apply the *Webb* factors to determine if there is a duty when an established duty already exists. *See Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384 (Ind. 2016). Here, Restatement § 317 sets forth that an employer has a "duty to exercise reasonable care so to control his servant while acting outside the scope of his employment" when specific conditions, which are at issue in this case, are met. Accordingly, we will not consider the *Webb* factors nor engage in a redetermination of duty. Additionally, unlike *Goodwin*, which involved an analysis of foreseeability of a criminal act because it was part of the duty analysis, we will not engage in an analysis of foreseeability of the harm to Hudgins where it is not part of the duty analysis under Restatement § 317.