In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2792

REBECCA ZANDER,

*Plaintiff-Appellant*,

*v.*

SAMUEL ORLICH, JR., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:14-cv-00400-PRC — **Paul R. Cherry**, *Magistrate Judge.*

ARGUED SEPTEMBER 14, 2018 — DECIDED OCTOBER 30, 2018

Before BAUER, HAMILTON, and SCUDDER, *Circuit Judges*.

BAUER, *Circuit Judge.* Rebecca Zander filed negligence claims against John Buncich, in his official capacity as Sheriff of Lake County, Indiana, as well as intentional tort and civil rights claims against deputy sheriff Samuel Orlich, Jr. The District Court had jurisdiction over Zander's action for damages for Orlich's violation of the Fourteenth Amendment

to the United States Constitution pursuant to 42 U.S.C. § 1983, and supplemental jurisdiction over her related state claims against Orlich and Buncich pursuant to 28 U.S.C. § 1367.

Zander sued Buncich seeking to hold him vicariously liable for an assault by Orlich. The district court granted Buncich summary judgment on Zander's *respondeat superior* claim, holding that Orlich was not acting within the scope of his official duties. The court granted summary judgment to Buncich on Zander's negligent hiring, training, and retention claim, because Zander presented no evidence that Buncich knew of the necessity of exerting control over Orlich to prevent his sexual misconduct. Zander appeals the order granting summary judgment for Buncich. After summary judgment was granted for Buncich, Zander's claims against Orlich were tried to a jury. Zander prevailed, and the jury awarded her $100,000 in compensatory damages, $275,000 in punitive damages, and attorneys fees and costs totaling $97,267.80.

For the reasons that follow, we reverse the summary judgment for Buncich as to Zander's *respondeat superior* claim, and affirm as to the negligent hiring claim.

## I. MATERIAL FACTS

On September 19, 2013, Orlich was working as a deputy for the Lake County, Indiana, Sheriff's Department (LCSD). He was wearing his LCSD uniform, and armed with a Glock .40 caliber gun. That same day, Zander's husband called county dispatch to report a domestic disturbance at his residence on Georgia Street. Orlich responded to the call.

After arriving at the scene, Orlich ordered Zander to leave the Georgia Street home and go to her other house on White Oak Avenue. Zander told Orlich that she could not go to the White Oak Avenue house because the furnace and electric panel had been dismantled.

Officer Michael Miller was also at the scene as Orlich's supervising officer. Officer Miller gave Orlich permission to take Zander to the White Oak Avenue house. Miller and Orlich dispute whether Miller gave Orlich permission to enter the White Oak Avenue house to make repairs.

After arriving at the White Oak Avenue house, Orlich and Zander went to the basement, and Orlich turned on the electricity and water heater. Orlich was unable to fix the furnace. Before leaving, Orlich told Zander that she could not return to the Georgia Street address for several hours. Orlich left, and Zander closed the house door.

About ten or fifteen minutes after Orlich left the house, Zander exited the bathroom and found Orlich standing there naked. He attacked Zander sexually, committing unspeakable acts, the details of which are unnecessary to repeat in the record here.

When Orlich got up to put his clothes back on, Zander crawled to the bathroom and locked the door. Orlich banged loudly on the bathroom door and said that he could make Zander's life very difficult if she said anything about what had happened. Orlich also told Zander that she could not stay in the White Oak Avenue house. Zander entered Orlich's squad car, and Orlich drove her to her friend's house.

## II. ANALYSIS

Zander brings Indiana state law tort claims against Buncich in his capacity as Sheriff. Zander asserts that Buncich is vicariously liable for Orlich's sexual battery and false imprisonment pursuant to the doctrine of *respondeat superior* and that Buncich negligently hired, trained, and retained Orlich. Because resolution of Zander's claims depends on Indiana law, the Court must apply Indiana law as the Indiana Supreme Court would apply it. *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 963 (7th Cir. 2000).

We review the district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the party opposing the motion. *Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 491–92 (7th Cir. 2002). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Summary judgment is appropriate when no material fact is disputed and the moving parties are entitled to judgment as a matter of law, meaning that no reasonable jury could find for the other party based on the evidence in the record." *Carman v. Tinkes*, 762 F.3d 565, 566 (7th Cir. 2014).

### A. *Respondeat Superior*

Under Indiana law, vicarious liability will generally be imposed upon an employer under the doctrine of *respondeat superior* where the employee has inflicted harm "while acting within the scope of employment." *Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). "[I]n order for an employee's act to fall 'within the scope of employment,' the injurious act must be incidental to the conduct authorized or it must, to an appreciable extent, further the employer's business." *Id*. at 283–84. Whether an act falls within the scope of employment is generally a question of fact. *See Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 794 (Ind. 2015). Where conduct involves both "authorized acts unquestionably within the scope of employment" and "unauthorized acts unquestionably outside the scope of employment" it should be sent to a jury. *Stropes v. Heritage House Children's Ctr.*, 547 N.E.2d 244, 249–50 (Ind. 1989).

Liability can be imposed upon employers under *respondeat superior* for the tortious or criminal acts of their employees. *See, e.g.*, *Stropes*, 547 N.E.2d at 250 (Ind. 1989) (employee assaulted incapacitated patient); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 268 (Ind. Ct. App. 2000) (equipment manager molested participating youths). The Indiana Supreme Court recently reiterated "[c]riminal conduct that violates an employee's official duties, an employer's express orders, or even a most sacred professional duty may nevertheless be within the scope of employment. The critical inquiry is whether the tortious act arose naturally or predictably from the employment context." *Cox v. Evansville Police Dep't*, 107 N.E.3d 453,

463–64 (Ind. 2018) (Summary judgment for police department on *respondeat superior* claim reversed where police officer sexually assaulted woman in his custody).

In *Cox*, decided after the district court's decision in this case, the Indiana Supreme Court first spoke directly to the issue of a police officer's scope of employment when misusing employer-conferred power and authority to commit a sexual assault. *Id*. There, Officer Mark Rogers of Fort Wayne, Indiana, was on an operating-while-intoxicated patrol when fellow officers placed a severely intoxicated woman, Babi Beyer, into Rogers' squad car. *Id*. at 457. When Beyer began vomiting, Rogers drove her to a hospital. *Id*. Beyer's blood alcohol level was too high for Beyer to leave by herself and the hospital discharged her into police custody. *Id*. Rogers handcuffed Beyer, drove her to a secluded location, and raped her. *Id*. at 458. Rogers pleaded guilty to official misconduct, sexual misconduct, and rape. *Id*. Beyer sued the City of Fort Wayne on a *respondeat superior* theory. *Id*. The Indiana Supreme Court reversed the lower court's order of summary judgment for Fort Wayne, finding that a jury should determine whether Rogers' actions fell within the scope of employment. *Id*. at 464.

Generally, liability under a theory of *respondeat superior* attaches for sexual assault only where the assault occurs during physical, intimate contact required by a job. *Doe v. Vigo Cty.*, No. 17-3155, 2018 U.S. App. LEXIS 28005, at *7 (7th Cir. Oct. 3, 2018) (citing *Barnett v. Clark*, 889 N.E.2d 281, 286 (Ind. 2008)). In *Cox*, however, the Indiana Supreme Court held that "police officers' duties come with broad authority and intimidating power that may affect vicarious liability" and because

of that broad authority "the range of acts for which a city may be vicariously liable stretches far." *Cox*, 107 N.E.3d at 460. Because "police officers' employer-conferred power and authority carry an inherent risk of abuse" the inquiry into whether a police officer's action fall within the scope of employment consists of two questions: "First, did the officer abuse employer-conferred power and authority in committing the sexual assault? And second, did that abuse of power and authority flow naturally or predictably from the police-employment context in which it arose?" *Id*. at 464.

Here, the facts show that Orlich abused his employer-conferred power when he assaulted Zander. Orlich responded to the domestic disturbance call as a part of his regular duties, cloaked in the authority of his uniform. He ordered Zander into his squad car and transported her to the White Oak address. Orlich directed her to remain at the property for several hours, knowing she would be alone when he returned minutes later. Additionally, Orlich's uniform and sidearm were present in the room while he assaulted Zander.

Orlich exploited "unique institutional prerogatives of his police employment." *Id*. Because of this connection, Buncich is not entitled to summary judgment. Whether Orlich's employment gave rise to the abuse of that power is a question of fact for the jury. The jury must determine if Orlich's "employment activities naturally or predictably led to 'his taking advantage of the opportunity' to commit sexual assault by abusing the 'authority and proximity and privacy' of his employment." *Id*. (citing *West ex rel. Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997)).

The granting of summary judgment to Buncich is reversed and remanded for further proceedings.

## B. Negligent Hiring, Training, and Retention

Indiana law recognizes a cause of action against an employer for the negligent hiring, training, and retention of an employee. *See Hudgins v. Bemish*, 64 N.E.3d 923, 925–26 (Ind. Ct. App. 2016); *Levinson v. Citizens Nat'l Bank of Evansville*, 644 N.E.2d 1264, 1269 (Ind. Ct. App. 1994). The standard set forth in Restatement (Second) of Torts § 317 governs these claims. *Hudgins*, 64 N.E.3d at 925–26.

This general rule states that an employer has a duty to exercise reasonable care to control his employee to prevent harm against a person, but this duty exists only if the employer "(i) knows or has reason to know that he has the ability to control his [employee], and (ii) knows or should know of the necessity and opportunity for exercising such control." Restatement (Second) of Torts § 317. Where a general duty has been articulated, foreseeability is "the critical inquiry" in determining whether the general duty applies to a particular scenario. *Rogers v. Martin*, 63 N.E.3d 316, 320 (Ind. 2016).

To prevail, Zander must show that Buncich knew or had reason to know that Orlich would act as he did and failed to take appropriate action to prevent it. *See Grzan v. Charter Hosp.*, 702 N.E.2d 786, 793 (Ind. Ct. App. 1998) (Summary judgment was reversed where question of fact remained about supervisor's knowledge of ongoing misconduct); *see also Frye v. American Painting Co.*, 642 N.E.2d 995, 999 (Ind. Ct. App. 1994) (Holding it was foreseeable that a painting company employee with a history of burglary and arson would burglar-

ize and set fire to a house.); *Sandage v. Board of Commissioners of Vanderburgh County*, 897 N.E.2d 507, 513–14 (Ind. Ct. App. 2008) (Holding it was not foreseeable that a parking company employee with robbery and drug use history would drive to an apartment and kill three people).

Here, there was no evidence that Buncich should have known that Orlich was likely to assault a member of the public. The record is absent of any suggestion that Orlich had a history of this type of misconduct. The district court correctly granted Buncich's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, the order granting summary judgment for Buncich is REVERSED on Zander's *respondeat superior* claim and REMANDED for further proceedings, and AFFIRMED on Zander's negligent hiring, training and retention claim.