



FILED
Sep 13 2018, 12:07 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Indiana Supreme Court

Supreme Court Case No. 18S-CT-447

## Jennifer Cox,
*Appellant (Plaintiff)*

–v–

## Evansville Police Department
## and The City of Evansville,
*Appellees (Defendants)*

---

## Babi Beyer,
*Appellant/Cross-Appellee (Plaintiff)*

–v–

## The City of Fort Wayne,
*Appellee/Cross-Appellant (Defendant)*

---

Argued: February 15, 2018 | Decided: September 13, 2018

Appeal from the Vanderburgh Circuit Court,
No. 82C01-1209-CT-479
The Honorable David D. Kiely, Judge

Appeal from the Allen Superior Court,
No. 02D01-1506-CT-247
The Honorable Nancy Eshcoff Boyer, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 82A01-1610-CT-2299

---

**Opinion by Chief Justice Rush**

Justices Massa, Slaughter, and Goff concur.

Justice David concurs in result.

## Rush, Chief Justice

Two on-duty police officers—one in Fort Wayne and one in Evansville—sexually assaulted women, who then brought civil actions against the officers' city employers. We address two theories of employer liability: (1) the scope-of-employment rule, traditionally called *respondeat superior*, and (2) the rule's common-carrier exception, which imposes a more stringent standard of care on certain enterprises. We hold that the cities may be liable under the scope-of-employment rule and that the exception does not apply.

Resounding in our decision today is the maxim that great power comes with great responsibility.[1] Cities are endowed with the coercive power of the state, and they confer that power on their police officers. Those officers, in turn, wield it to carry out employment duties—duties that may include physically controlling and forcibly touching others without consent. For this reason, when an officer carrying out employment duties physically controls someone and then abuses employer-conferred power to sexually assault that person, the city does not, under *respondeat superior*, escape liability as a matter of law for the sexual assault.

We thus affirm the denial of summary judgment to the City of Fort Wayne on the *respondeat superior* issue. In doing so, we clarify when an officer's tortious acts will fall within the scope of employment, making the city liable.

We also hold that the relationships between the cities and the women in these cases do not fall within the common-carrier exception, which we decline to extend. We therefore affirm the trial courts' grants of summary judgment to the cities on the common-carrier theory.

---

[1] This maxim finds iteration across time and form, from the Bible's "[f]or everyone to whom much is given, from him much will be required," *Luke* 12:48 (New King James), to Franklin D. Roosevelt's "great power involves great responsibility," *Text of Final FDR Speech Released*, The Daily Illini, Apr. 14, 1945, at 3, to Lee and Ditko's "in this world, with great power there must also come—great responsibility!," Stan Lee & Steve Ditko, *Amazing Fantasy #15 Introducing Spider-Man* 11 (1962).

# Facts and Procedural History

These consolidated appeals concern similarly disturbing tales from two cities—Evansville and Fort Wayne. In each city, an on-duty police officer sexually assaulted a person he was dispatched to investigate.

In Evansville, Jennifer Cox and Debbie Jackson had been drinking and arguing at Jackson's apartment when Cox hit Jackson. Jackson called the Evansville Police Department, which dispatched two officers. Before either officer arrived to the scene, one of them—Officer Martin Montgomery—called off the other to handle the situation alone.

When Officer Montgomery arrived at Jackson's apartment, he told Jackson that she could have Cox stay with her or he would take Cox home. Jackson chose the second option.

Officer Montgomery then drove Cox home and reported to dispatch that he had "cleared the run," meaning he was available for another one. He left his patrol car running and accompanied Cox to her door. When she opened it and went inside, Officer Montgomery followed her in, without invitation or force. Cox thought he was "just being an [o]fficer, making sure I got in alright knowing I was drinking that night."

Once inside, Officer Montgomery closed the door and asked Cox if she wanted to have oral sex with him. She said no. Officer Montgomery then pushed her down toward his genital area; removed his gun belt; unzipped his pants; and coerced her into oral, anal, and vaginal sex. He then zipped up his pants, reattached his gun belt, and left. For these acts, he was convicted of two counts of felony criminal deviate conduct.

Unfortunately, Officer Montgomery's misconduct is not the only sexual assault by an on-duty Indiana police officer that we must address today.

In Fort Wayne, Babi Beyer became heavily intoxicated and tried to drive home from a restaurant. Shortly before 2:00 a.m., the Fort Wayne Police Department dispatched three officers to her vehicle, which was stopped in a road. The officers found Beyer in the driver's seat, intoxicated and teetering in and out of consciousness.

The responding officers put Beyer into Officer Mark Rogers's car since he was assigned to operating-while-intoxicated patrol and enforcement. Officer Rogers then drove Beyer to the Allen County lock-up facility for a breath test. Before Beyer got out of the car at the facility, she began vomiting, so Officer Rogers drove her to the hospital.

At the hospital, medical personnel traded Beyer's vomit-covered clothing for scrubs and performed a blood test. The test showed an alcohol level of .2555—too high for Beyer to leave by herself. But because Beyer would be released into police custody, the attending physician discharged her to be taken to lock-up, and Officer Rogers walked her to his patrol car.

Before driving away from the hospital, Officer Rogers handcuffed Beyer and put her in the back seat of his patrol car. When Beyer complained that the handcuffs were painful, Officer Rogers loosened them, fondled her breast, and told her she was "hot."

He then drove around for a while and parked in a dark, quiet area. He got out of the car, grabbed Beyer by the arm, and "helped" her out of the back seat. She was still wearing hospital scrubs—no underwear, no shoes. Officer Rogers was in full police uniform, weapon belt included. He walked Beyer across grass, twigs, and stones to a bench. There, he touched her breasts, put her hands on his penis, and raped her. He then took her back to the car, drove to a parking lot, and locked Beyer inside a crime scene van, where she lost consciousness. Officer Rogers later drove Beyer home and reported that he had completed the run—nearly four hours after being sent to Beyer's stopped car.

The State brought criminal charges against Officer Rogers, who pleaded guilty to three felonies: official misconduct, sexual misconduct, and rape.

Each woman sued the respective assaulting officer's city employer.

Cox sued the City of Evansville and the Evansville Police Department (collectively, "Evansville") in federal district court. The court dismissed the action without prejudice, *see Cox v. Evansville Police Dep't*, No. 3:10-cv-00156-SEB-WGH, 2012 WL 2317074 at *1 (S.D. Ind. June 18, 2012), and Cox filed a complaint in state court. After she specified three theories of liability—the general rule of *respondeat superior*; the common-carrier

exception; and negligent hiring, retention, and supervision—Evansville moved for summary judgment, which the trial court granted on the common-carrier theory. Cox then filed this interlocutory appeal of the court's decision that the common-carrier exception does not apply.

Beyer similarly sued the City of Fort Wayne, claiming vicarious liability under the doctrine of *respondeat superior* and negligent hiring, training, supervision, and retention. After Fort Wayne moved for summary judgment, Beyer added a common-carrier theory. The trial court allowed Fort Wayne to respond to the addition, and then granted Fort Wayne summary judgment on the common-carrier theory and on the negligent hiring, training, supervision, and retention claim, but not on the issue of liability under *respondeat superior*. Fort Wayne and Beyer each filed an interlocutory appeal: Fort Wayne on liability under *respondeat superior*, and Beyer on the common-carrier exception.

The Indiana Court of Appeals accepted and consolidated both cases' appeals. *Cox v. Evansville Police Dep't*, 84 N.E.3d 678, 680 (Ind. Ct. App. 2017).[2] It then reversed the trial courts' orders granting summary judgment to Evansville and Fort Wayne ("the cities") on the common-carrier issue and affirmed the denial of summary judgment to Fort Wayne on *respondeat superior* liability. *Id.*

The cities each petitioned to transfer. We now grant both petitions, vacating the Court of Appeals opinion. Ind. Appellate Rule 58(A).

## Standard of Review

We address two questions of law raised in motions for summary judgment. First, does Fort Wayne escape liability as a matter of law under

---

[2] Each woman also sued the assaulting officer. Officer Montgomery was dismissed from the action Cox filed in federal court and is not a defendant in the state court action. Officer Rogers is a defendant in Beyer's state court action. He has not appeared or otherwise participated in this appeal, but he is a party on appeal because he is a party of record in the trial court. *See* Ind. Appellate Rule 17(A).

the doctrine of *respondeat superior*? *See Barnett v. Clark*, 889 N.E.2d 281, 283 (Ind. 2008). Second, does the common-carrier exception apply? *See Stropes ex rel. Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 252–53 (Ind. 1989).

We review summary judgment and these questions of law de novo. *See* Ind. Trial Rule 56(C); *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014); *Ballard v. Lewis*, 8 N.E.3d 190, 193 (Ind. 2014).

# Discussion and Decision

In their claims against the cities, each woman asserts two theories of vicarious liability: First, the officer's sexual assault occurred within the scope of his employment, making the city liable under *respondeat superior*'s scope-of-employment rule. And second, even if the sexual assault occurred outside the officer's scope of employment, the city breached a nondelegable, common-carrier duty, making the city liable under that exception to the scope-of-employment rule.

Fort Wayne contends that the sexual assault was outside its police officer's scope of employment as a matter of law. And both cities maintain that the common-carrier exception does not apply.

Vicarious liability for an on-duty police officer's sexual assault is an issue of first impression for this Court. Courts in other states have confronted similar issues, revealing variations not only in identifying police officers' scope of employment, but also in applying exceptions to *respondeat superior*'s scope-of-employment rule and in adopting sections of the Restatement (Second) of Agency.[3] We have not adopted—and the

---

[3] *See, e.g.*, *Red Elk ex rel. Red Elk v. United States*, 62 F.3d 1102, 1107–08 (8th Cir. 1995) (applying South Dakota law and affirming finding that on-duty police officer's rape occurred within the scope of his employment); *Buie v. District of Columbia*, 273 F. Supp. 3d 65, 68 (D.D.C. 2017) (denying motion to dismiss claim of vicarious liability for police officer's sexual assault, based on section 219(2)(d) of the Restatement (Second) of Agency); *Peña v. Greffet*, 110 F. Supp. 3d 1103, 1140 (D.N.M. 2015) (applying New Mexico law and denying motion to dismiss plaintiff's aided-in-agency theory of vicarious liability for corrections officer's sexual assault of inmate); *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1342 (Cal. 1991) (in bank) (holding

parties do not urge us to adopt—the relevant sections of the Restatement (Second) of Agency. *See Stropes*, 547 N.E.2d at 250.

But the variations in how courts have addressed sexual assaults by police officers reveal a common theme—that police officers' duties come with broad authority and intimidating power that may affect vicarious liability. *See Doe v. City of Chicago*, 360 F.3d 667, 671 (7th Cir. 2004) (collecting cases). More specifically, because police officers' employer-conferred power is so great, the range of acts for which a city may be vicariously liable stretches far. *See, e.g.*, *id.*; *Red Elk ex rel. Red Elk v. United States*, 62 F.3d 1102, 1106–07 (8th Cir. 1995); *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1349–50 (Cal. 1991) (in bank); *Applewhite v. City of Baton Rouge*, 380 So. 2d 119, 121–22 (La. Ct. App. 1979).

Like other courts confronting police officers' sexual assaults, we consider the unique nature of police employment as we evaluate this issue under Indiana common law. We first hold that Fort Wayne does not escape liability as a matter of law under the scope-of-employment rule.[4] We then turn to the common-carrier exception and hold that it does not

------

that police officer's sexual assault was not outside the scope of employment as a matter of law); *Rawling v. City of New Haven*, 537 A.2d 439, 446 (Conn. 1988) (reversing summary judgment on a genuine issue of material fact about whether police officer's sexual assault was "in the course of his duty"); *Sherman v. State Dep't of Pub. Safety*, No. 206, 2017, --- A.3d ----, 2018 WL 3118856 at *23–28 (Del. June 26, 2018) (3-2 decision) (applying subsections 219(2)(c) and (d) of the Restatement (Second) of Agency as nondelegable-duty and aided-in-agency exceptions to section 228); *Applewhite v. City of Baton Rouge*, 380 So. 2d 119, 122–23 (La. Ct. App. 1979) (affirming judgment against city employer because on-duty police officer "abused the 'apparent authority' given such persons to act in the public interest" when the officer sexually assaulted a woman); *Hamed v. Wayne County*, 803 N.W.2d 237, 244–48, 258 (Mich. 2011) (concluding that sheriff deputy's sexual assault of inmate was unforeseeable and so outside the scope of employment, and declining to apply an aided-by-agency exception to Michigan's *respondeat superior* rule); *Doe v. Forrest*, 853 A.2d 48, 55, 69 (Vt. 2004) (finding sexual assault by sheriff's deputy outside the scope of his employment, but adopting—and reversing summary judgment under—section 219(2)(d) of the Restatement (Second) of Agency); *Boyer-Gladden v. Hill*, 224 P.3d 21, 29 (Wyo. 2010) (affirming summary judgment to sheriff under the Wyoming Governmental Claims Act for employee's sexual assault of inmate, citing Wyoming case law asserting that sexual misconduct is never within the scope of any public officer's duties).

[4] The appeal in Cox's case concerns only the common-carrier theory, not the scope-of-employment rule of *respondeat superior*.

apply in these cases. Thus, the cities are entitled to summary judgment on the common-carrier theory, but not on the issue of liability under *respondeat superior*'s scope-of-employment rule.

## I. The scope-of-employment rule of *respondeat superior*.

For well over a hundred years, Indiana has recognized the doctrine of *respondeat superior*—Latin for "let the superior make answer," *Respondeat superior*, Black's Law Dictionary 1505 (10th ed. 2014). *See, e.g., Barnett*, 889 N.E.2d at 283–84; *Smith v. Louisville, Evansville & St. Louis R.R.*, 124 Ind. 394, 400–01, 24 N.E. 753, 755 (1890); *Evansville & Terre Haute R.R. v. McKee*, 99 Ind. 519, 520–21 (1885). Under this doctrine, an employer is liable for employees' tortious acts only if those acts occurred within the scope of employment. *See Barnett*, 889 N.E.2d at 283; *Smith*, 124 Ind. at 400, 24 N.E. at 755.

This scope-of-employment rule is "[t]he general rule" of vicarious liability for both government and private employers. *Barnett*, 889 N.E.2d at 283; *Benton v. City of Oakland City*, 721 N.E.2d 224, 228 (Ind. 1999). And it is the basis for the first question we face: Did Officer Rogers's sexual assault of Babi Beyer occur outside the scope of his employment as a matter of law?

Whether an act falls within the scope of employment is generally a question of fact. *See Knighten v. E. Chi. Hous. Auth.*, 45 N.E.3d 788, 794 (Ind. 2015). But when the relevant facts are undisputed and would not allow a jury to find that the tortious acts were within the scope of employment, we may conclude as a matter of law that they were not. *Stropes*, 547 N.E.2d at 248–50.

Fort Wayne argues that Officer Rogers's sexual assault was outside the scope of his employment as a matter of law because it was neither authorized by the city nor done as a service to the city.

Beyer counters that the city is not entitled to judgment as a matter of law because Rogers's acts were, for a time, authorized by the city—even though Rogers was not authorized to sexually assault her.

Beyond question, cities do not authorize their police officers to sexually assault people. Indeed, sexual assault is directly opposed to police officers' law-enforcement and community-caretaking functions. *See, e.g.,* Ind. Const. art. 5, § 16; Ind. Code § 5-2-1-17 (2018); Ind. Code § 10-11-2-21 (2018); *Fair v. State*, 627 N.E.2d 427, 431 (Ind. 1993) (recognizing that police both enforce criminal laws and enhance community safety). But, as we discuss below, that does not necessarily place an officer's sexual assault outside the sphere of employee actions for which the city may be responsible.

Having never before evaluated whether sexual assault may fall within the scope of an on-duty police officer's employment, we begin by examining the policies that shape Indiana's scope-of-employment rule. We then observe distinctive characteristics of police officers' employment that affect the scope-of-employment analysis. And finally, we evaluate whether Officer Rogers's acts fell outside the scope of his employment as a matter of law.

### A. Under Indiana's scope-of-employment rule, an employer is liable for employees' tortious acts that arise naturally or predictably from the employment context.

The scope-of-employment rule emanates from the concept of control. *Stropes*, 547 N.E.2d at 252; *see Dickson v. Waldron*, 135 Ind. 507, 516–20, 34 N.E. 506, 509–10 (1893). More specifically, it springs from the employer's control over its employees and their employment activities: the employer controls whom it hires, what employment duties it assigns, how it empowers employees to carry out those duties, and how it guards against harm arising from employment activities. *See Barnett*, 889 N.E.2d at 284–85; *Stropes*, 547 N.E.2d at 249–50; *Dickson*, 135 Ind. at 516–19, 34 N.E. at 509; *City of Indianapolis v. West*, 81 N.E.3d 1069, 1072–73 (Ind. Ct. App. 2017).

Although scope-of-employment liability is rooted in this control, it extends beyond actual or possible control, holding employers responsible for some risks inherent in the employment context. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509–10; *West*, 81 N.E.3d at 1072–73; *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 107–08 (Ind. Ct. App. 2014), *trans. denied*. Ultimately, the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities. *See Stropes*, 547 N.E.2d at 250; *Dickson*, 135 Ind. at 518, 34 N.E. at 509; *West*, 81 N.E.3d at 1072–73; *cf. Tippecanoe Beverages, Inc. v. S.A. El Aguila Brewing Co.*, 833 F.2d 633, 638 (7th Cir. 1987) (applying Indiana law).

This means that the scope of employment—which determines whether the employer is liable—may include acts that the employer expressly forbids; that violate the employer's rules, orders, or instructions; that the employee commits for self-gratification or self-benefit; that breach a sacred professional duty; or that are egregious, malicious, or criminal. *See, e.g.*, *Warner Trucking, Inc. v. Carolina Cas. Ins.*, 686 N.E.2d 102, 105 (Ind. 1997) (trucker's drunk driving); *Stropes*, 547 N.E.2d at 245, 249 (nurse aide's sexual assault of resident); *Walgreen*, 21 N.E.3d at 103, 109 (pharmacist's breach of privacy for prescription records); *Southport Little League v. Vaughan*, 734 N.E.2d 261, 266–67, 270 (Ind. Ct. App. 2000) (equipment manager's molestation of youths), *trans. denied*; *Gomez v. Adams*, 462 N.E.2d 212, 224–25 (Ind. Ct. App. 1984) (security officer's conversion of arrestee's check-cashing card).

The scope of employment extends beyond authorized acts for two key reasons. First, it is equitable to hold people responsible for some harms arising from activities that benefit them. *See Dickson*, 135 Ind. at 518, 34 N.E. at 510. When employees carry out assigned duties, those employment activities "further the employer's business" to an appreciable extent, benefiting the employer. *Barnett*, 889 N.E.2d at 283; *see also West*, 81 N.E.3d at 1072. But delegating employment activities also carries an inherent risk that those activities will naturally or predictably give rise to injurious conduct. *See Stropes*, 547 N.E.2d at 249–50; *Dickson*, 135 Ind. at 517–18, 34 N.E. at 509; *West*, 81 N.E.3d at 1072–73. When that happens, the employer is justly held accountable since the risk accompanies the employer's

benefit. *See West*, 81 N.E.3d at 1072 n.2; *Stump v. Ind. Equip. Co.*, 601 N.E.2d 398, 403 (Ind. Ct. App. 1992), *trans. denied*.

Second, holding employers liable for those injurious acts helps prevent recurrence. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509; *accord West ex rel. Norris v. Waymire*, 114 F.3d 646, 649 (7th Cir. 1997); *Tippecanoe Beverages*, 833 F.2d at 638. Employers can take measures—like selecting employees carefully and instituting procedures that lessen employment dangers—to reduce the likelihood of tortious conduct. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509–10; *accord Waymire*, 114 F.3d at 649; *Tippecanoe Beverages*, 833 F.2d at 638. Since employers have some control over the risk of injurious conduct flowing from employment activities, imposing liability on employers for that conduct encourages them to take preventive action. *See Dickson*, 135 Ind. at 518, 34 N.E. at 509; *accord Waymire*, 114 F.3d at 649; *Tippecanoe Beverages*, 833 F.2d at 638; *Mary M.*, 814 P.2d at 1343.

To be clear, the focus in determining the scope of employment "must be on how the employment relates to the context in which the commission of the wrongful act arose." *Barnett*, 889 N.E.2d at 285 (quoting *Stropes*, 547 N.E.2d at 249). When tortious acts are so closely associated with the employment that they arise naturally or predictably from the activities an employee was hired or authorized to do, they are within the scope of employment, making the employer liable. *West*, 81 N.E.3d at 1072–73. But tortious acts are not within the scope of employment when they flow from a course of conduct that is independent of activities that serve the employer. *Barnett*, 889 N.E.2d at 283–84.

With this framework in mind, we now turn to police officers' scope of employment.

## B. When a police officer misuses employer-conferred power and authority to commit sexual assault, the city is liable for the assault if it arose naturally or predictably from the officer's employment activities.

Since the scope of employment depends on whether acts naturally or predictably arise from the employment context, our inquiry into police

officers' scope of employment begins with the activities and authority that cities delegate to their officers.

Cities assign police officers law-enforcement and community-protection duties. *Fair*, 627 N.E.2d at 431. Those duties come with state authority to detain, arrest, frisk, search, seize, and even use deadly force when necessary. *See* Ind. Code § 35-41-3-3 (2018); *cf. Plumhoff v. Rickard*, 134 S. Ct. 2012, 2021–22 (2014); *Terry v. Ohio*, 392 U.S. 1, 29–30 (1968). Cities also outfit their officers with visible signs of their employer-conferred authority—a marked car, uniform, badge, and weapons—which officers use to carry out their employment duties. These duties frequently authorize and involve entering homes; detaining criminal suspects at gunpoint; placing suspects in handcuffs and into police vehicles; and subjecting them to forceful, nonconsensual, and offensive contact. *See* I.C. § 35-41-3-3; *cf. Arizona v. Johnson*, 555 U.S. 323, 328, 332 (2009); *Los Angeles County v. Rettele*, 550 U.S. 609, 611, 615 (2007) (per curiam); *Perez v. State*, 981 N.E.2d 1242, 1247, 1252 (Ind. Ct. App. 2013), *trans. denied*.

Investing officers with these considerable and intimidating powers comes with an inherent risk of abuse. *See Dickson*, 135 Ind. at 517–18, 34 N.E. at 509; *City of Chicago*, 360 F.3d at 671; *Doe v. Forrest*, 853 A.2d 48, 61–62 (Vt. 2004). When that abuse is a tortious act arising naturally or predictably from the police officer's employment activities, it falls within the scope of employment for which the city is liable. Thus, if an on-duty police officer commits a sexual assault by misusing official authority, the sexual assault is within the scope of employment if the employment context naturally or predictably gave rise to that abuse of official authority.

The reasons underlying scope-of-employment liability support this conclusion. First, the city benefits from the lawful exercise of police power, so when tortious abuse of that power naturally or predictably flows from employment activities, the city equitably bears the cost of the victim's loss. *See West*, 81 N.E.3d at 1072–73. And second, holding the city liable encourages it to guard against recurrent assaults. Particularly because cities vest considerable power and authority in police officers, we

want cities to exercise vigilance in hiring and supervising officers. *See Waymire*, 114 F.3d at 649.

So the scope-of-employment rule, shaped by its underlying policies, allows employer liability for an officer's sexual assault. We stress that the unique authority that cities vest in police officers drives this conclusion. As other courts have observed, "[t]he danger that an officer will commit a sexual assault while on duty arises from the considerable authority and control inherent in the responsibilities of an officer in enforcing the law." *Mary M.*, 814 P.2d at 1350; *accord City of Chicago*, 360 F.3d at 671; *Forrest*, 853 A.2d at 61–62. Employees without this authority and power who commit sexual assaults may be acting outside the scope of their employment as a matter of law. *See, e.g., L.N.K. ex rel. Kavanaugh v. St. Mary's Med. Ctr.*, 785 N.E.2d 303, 308 (Ind. Ct. App. 2003), *trans. denied*; *Konkle v. Henson*, 672 N.E.2d 450, 457 (Ind. Ct. App. 1996).

We now evaluate the relationship between Officer Rogers's employment context and his sexual assault of Babi Beyer.

## C. A jury could find Fort Wayne liable for Officer Rogers's sexual assault.

As discussed above, whether particular acts come within the scope of employment is generally a question of fact for the jury. The question of law for us to decide is whether Officer Rogers's sexual assault was so disconnected from his employment activities that a jury could not find that the assault arose naturally or predictably from the employment context. We hold that Officer Rogers's misconduct was not so disconnected.

It goes without saying that sexual assault was not part of Officer Rogers's assigned duties. Indeed, his misconduct was the antithesis of law enforcement and community protection. But as already explained, criminal conduct that violates an employee's official duties, an employer's express orders, or even a most sacred professional duty may nevertheless be within the scope of employment. The critical inquiry is whether the tortious act arose naturally or predictably from the employment context.

Since we recognize that police officers' employer-conferred power and authority carry an inherent risk of abuse, this inquiry consists of two questions: First, did the officer abuse employer-conferred power and authority in committing the sexual assault? And second, did that abuse of power and authority flow naturally or predictably from the police-employment context in which it arose?

Here, the undisputed facts show that Officer Rogers abused his employer-conferred power and authority in sexually assaulting Beyer. Fort Wayne assigned Officer Rogers to operating-while-intoxicated enforcement and patrol, and—as part of this assignment—dispatched Officer Rogers to Beyer's stopped vehicle. There, he and another officer placed Beyer into Officer Rogers's car, and Officer Rogers took over the investigation. As part of his employment duties, Officer Rogers was alone with Beyer, handcuffed her, and took her to the lock-up facility and to the hospital. During those times and as part of his employment activities, Officer Rogers exercised physical control and official authority over Beyer. That physical control continued as he again placed her in handcuffs, loosened them, fondled her breast, took her from the hospital to a dark wooded area, walked her to a bench, raped her, placed her in a crime scene van, and took her home. The whole time, he was on duty, wearing his police uniform, and exhibiting the coercive power and authority that accompany his official duties.

In sum, Officer Rogers sexually assaulted Beyer by exploiting unique institutional prerogatives of his police employment. Because of this connection, Fort Wayne is not entitled to summary judgment on the issue of liability under the doctrine of *respondeat superior*.

Whether Officer Rogers's employment activities naturally or predictably gave rise to that abuse of power is a question of fact for the jury. So on remand, the jury must decide if Officer Rogers's employment activities naturally or predictably led to "his taking advantage of the opportunity" to commit sexual assault by abusing the "authority and proximity and privacy" of his employment. *Waymire*, 114 F.3d at 649. Like foreseeability in determining proximate cause in negligence cases, this is a

particularly fact-sensitive issue. *See Kramer v. Catholic Charities of the Diocese of Fort Wayne–S. Bend*, 32 N.E.3d 227, 231 (Ind. 2015).

We note that the current pattern jury instructions on *respondeat superior* do not account for the unique circumstances of police officers' employment, which affect whether an officer's tortious conduct flowed naturally or predictably from the employment context. Nor do the pattern instructions reflect Indiana's *respondeat superior* law more generally. This is because, to fall within the scope of employment, the tortious act itself need not be intended to serve the employer—any more than a nurse aide's sexual assault of a severely disabled resident can be intended to serve the care center employer, *Stropes*, 547 N.E.2d at 245, 247, or an equipment manager's molestation of children can be intended to serve the Little League employer, *Southport Little League*, 734 N.E.2d at 266–67, 270. And as already explained, the employer need not authorize the tortious act for it to fall within the scope of employment. Rather, the tortious act must come from a course of conduct the employee performs in the employer's service. *See Barnett*, 889 N.E.2d at 283.

Because a question of fact remains about whether Officer Rogers's sexual assault occurred within the scope of his employment, we affirm the denial of summary judgment to Fort Wayne on the issue of liability under the doctrine of *respondeat superior*.

## II. The common-carrier exception does not apply.

Our next task is to determine whether the common-carrier exception to the general scope-of-employment rule applies in these cases. Put differently, did the cities assume a common-carrier duty of care for Cox and Beyer?

Common-carrier liability is an exception to the general scope-of-employment rule because it does not depend on whether employees' injurious conduct fell within the scope of employment. *Stropes*, 547 N.E.2d at 253. Instead, it depends on a special relationship between the employer and its patron. *Id.* When the employer has assumed a common-carrier duty to exercise extraordinary care for its patrons, the employer can be

liable whether or not an employee's tortious acts were within the scope of employment. *Id.*

The existence of a common-carrier duty is a matter of law. *Id.* We have never held that cities owe a common-carrier duty to individuals who interact with on-duty police officers sent to investigate or help them. The women argue that we should do so now because of the control that the police officers exerted over the women.

The cities respond that the common-carrier exception is narrow and does not apply to the facts of these cases. They add that extending the exception here would expand it also to facts that we have already determined do not give rise to a common-carrier duty.

After examining Indiana's common-carrier exception, we conclude that the relationships between the cities and the women do not fit within the exception, which we decline to expand.

Like the doctrine of *respondeat superior*, the common-carrier exception dates back over a century in Indiana law. *See Dickson*, 135 Ind. at 520, 34 N.E. at 510. And like the scope-of-employment rule, the common-carrier exception's premise is control. *See Stropes*, 547 N.E.2d at 252.

With this common denominator of control, the policy reasons underlying the rule and the exception are the same: allotting the cost of injury to the beneficiaries of the enterprise that gave rise to the loss, and encouraging employers to take precautions against hazards. *See Dickson*, 135 Ind. at 518–19, 34 N.E. at 509–510; *Waymire*, 114 F.3d at 649.

But the kind of control that underpins each theory is different. Scope-of-employment liability derives from the employer's control over its employees; common-carrier liability requires that a patron hand over control and autonomy to an enterprise or employer. *Stropes*, 547 N.E.2d at 253.

This means that each theory's application is distinct, though they may overlap—rendering an employer liable under both theories. *See, e.g., id.* at 254. But as an exception to the scope-of-employment rule—which is the

"general rule" of vicarious liability, *Barnett*, 889 N.E.2d at 283—the common-carrier theory is narrower.

As its name implies, the common-carrier exception originated with common carriers. *See Indianapolis Union Ry. v. Cooper*, 6 Ind. App. 202, 205, 33 N.E. 219, 219–20 (1893). These commercial enterprises—such as shipowners, railroads, or airlines—"contract[] to transport passengers or goods for a fee" and are "generally required by law to transport freight or passengers without refusal if the approved fare or charge is paid." *Carrier*, Black's Law Dictionary 256 (10th ed. 2014). The carrier assumes a nondelegable duty to exercise heightened, extraordinary care because of its special relationship to patron–passengers. *Stropes*, 547 N.E.2d at 250–51.

The special carrier–patron relationship emerges from a so-called "contract of passage" in which the carrier invites the public to pay a fare in exchange for safe passage. *Id.* at 252. For those who accept that invitation to become patrons or guests, the carrier assumes a special, contractual duty of protection for the agreed-upon "period of accommodation." *Id.* As a result, the common-carrier exception does not extend to non-patrons, who have not entered a "contract of passage." *Compare Dickson*, 135 Ind. at 517, 34 N.E. at 509 ("It is well settled that one who has purchased his ticket, and is passing at the proper time from the depot to the train, is a passenger, and entitled to the rights of a passenger."), *with Carter v. Louisville, New Albany & Chi. Ry.*, 98 Ind. 552, 556 (1885) (applying scope-of-employment rule, and not common-carrier exception, when a party entered a streetcar without intending to pay his fare).

True, we have applied the exception outside the common-carrier context—to innkeepers and their guests, theatrical managers and their patrons, and a children's center and its severely disabled resident. *See Stropes*, 547 N.E.2d at 254; *Dickson*, 135 Ind. at 520, 34 N.E. at 510. So the exception is broader in Indiana than in many other states. *See, e.g.*, *Worcester Ins. v. Fells Acres Day Sch., Inc.*, 558 N.E.2d 958, 967–68 (Mass. 1990); *Maguire v. State*, 835 P.2d 755, 759 (Mont. 1992); *Davis v. Devereux Found.*, 37 A.3d 469, 487–88 (N.J. 2012); *Niece v. Elmview Grp. Home*, 929 P.2d 420, 422, 428–30 (Wash. 1997). But even in Indiana's extended

applications, the common-carrier nondelegable duty arises from the parties' "contract of passage," which "formed the basis of [the parties'] relationship." *Stropes*, 547 N.E.2d at 253–54. The exception does not apply to relationships lacking that fundamental feature.

This means that relationships may involve lopsided autonomy, responsibility, and control without invoking the common-carrier exception. For example, the State is responsible for inmate safety, and schools exercise control over students. But the duty of care in those relationships is one of reasonable care to preserve safety. *See Sauders v. County of Steuben*, 693 N.E.2d 16, 18 (Ind. 1998) (inmates and custodians); *Miller ex rel. Miller v. Griesel*, 261 Ind. 604, 612, 308 N.E.2d 701, 706 (Ind. 1974) (students and schools); *see also Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 615 (7th Cir. 2008) ("[W]ell-settled Indiana law does not impose a non-delegable duty on [the school] for the safekeeping of its students . . . .").[5] The common-carrier exception does not apply since those relationships generally are not based on a contract with an assurance of safety—much less a "contract of passage." *See Stropes*, 547 N.E.2d at 252.

The same is true of the relationships here. Though the responding officers exercised control over Cox and Beyer, the women's relationships with the cities were not contractual as required to invoke the common-carrier exception. Neither Cox nor Beyer entered a "contract of passage" with Evansville or Fort Wayne: there was no invitation, no acceptance of

---

[5] In one anomalous case, an Indiana Court of Appeals panel extended the common-carrier exception to a sheriff after his jailer summoned an inmate into a shower room, where the inmate performed fellatio on the jailer. *Robins v. Harris*, 740 N.E.2d 914, 917–18 (Ind. Ct. App. 2000), *clarified on reh'g*, 743 N.E.2d 1142, 1143 (Ind. Ct. App. 2001). We granted transfer to address consent as a defense, but the parties settled before we decided the issue. *Robins v. Harris*, 769 N.E.2d 586, 587 (Ind. 2002). So we summarily affirmed the Court of Appeals opinions except on the consent issue and dismissed the appeal, *id.*, without adopting the common-carrier-exception holding, *see* App. R. 58(A)(2) (summarily affirmed opinions or portions thereof shall be considered as Court of Appeals authority). Since *Robins* did not find a "contract of passage"—as required for common-carrier liability—its common-carrier holding conflicts with this Court's decisions in *Sauders*, 693 N.E.2d at 18, and *Reed v. State*, 479 N.E.2d 1248, 1254 (Ind. 1985). We therefore disapprove *Robins*'s common-carrier analysis.

an invitation, no fare or other consideration, and no agreed-on period of accommodation. At most, Cox and Beyer entered a social contract of the sort contemplated by political theory.[6] But the "contract of passage" that imposes a common-carrier duty is not so vast or philosophical. If it were, the exception would lose its common-carrier moorings and swallow the standard scope-of-employment rule. *See Barnett*, 889 N.E.2d at 283; *Benton*, 721 N.E.2d at 228.

Certainly, citizens have a right to demand that the government's sworn protectors and law enforcers not disgrace their positions of power with criminal and tortious acts. As we've explained, though, the rule of *respondeat superior* holds cities liable for those injurious acts arising naturally or predictably from the employment context. Departing from our common-carrier precedent is thus unnecessary to address the public policy concerns underlying vicarious liability—policies that the scope-of-employment rule and the common-carrier exception share.

We therefore decline to extend Indiana's common-carrier exception outside relationships formed by a "contract of passage." Like other states that have addressed vicarious liability for on-duty police officers' sexual assaults, we do not find the common-carrier exception necessary or suitable to impose appropriate responsibility on the cities. So we affirm the trial courts' grants of summary judgment to the cities on the common-carrier theory.

# Conclusion

Cities confer on police officers "the most awesome and dangerous power that a democratic state possesses with respect to its residents—the power to use lawful force to arrest and detain them." *Policemen's*

---

[6] Social-contract theory postulates a contract among people to form and shape their society. *See generally* Thomas Hobbes, *Leviathan* (Oxford Univ. Press 1909) (1651); John Locke, *Two Treatises of Government* and *A Letter Concerning Toleration* (Ian Shapiro ed., Yale Univ. Press 2003) (1690); Jean-Jacques Rousseau, *The Social Contract* and *The First and Second Discourses* (Susan Dunn ed., Yale Univ. Press 2002) (1762).

*Benevolent Ass'n of N.J., Local 318 v. Township of Washington*, 850 F.2d 133, 141 (3d Cir. 1988). Because cities vest this immense power in their officers, the doctrine of *respondeat superior* holds cities legally responsible for officers' tortious abuse of their employer-conferred power when the abuse arises naturally or predictably from an officer's employment activities.

Whether Officer Rogers's conduct naturally or predictably flowed from his employment activities is a question of fact for the jury. But the connection between his employment activities and his sexual assault of Beyer was more than enough for her claim to survive summary judgment. We therefore affirm the denial of summary judgment to Fort Wayne on the issue of *respondeat superior*.

On the common-carrier issue, the women's relationships with the cities do not fit within the parameters that give rise to a common-carrier duty. We therefore affirm the grants of summary judgment to the cities on the common-carrier theory of liability.

Massa, Slaughter, and Goff, JJ., concur.
David, J., concurs in result.

ATTORNEYS FOR APPELLANT JENNIFER COX
James H. Young
John P. Young
Young & Young
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES EVANSVILLE POLICE
DEPARTMENT AND THE CITY OF EVANSVILLE
Keith W. Vonderahe
Robert L. Burkart
Ziemer, Stayman, Weitzel & Shoulders, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE BABI BEYER
Edward E. Beck
John S. Bloom
Shambaugh, Kast, Beck & Williams, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE/CROSS-APPELLANT
THE CITY OF FORT WAYNE
Carolyn M. Trier
Trier Law Office
Fort Wayne, Indiana

ATTORNEYS FOR AMICI CURIAE
ACCELERATE INDIANA MUNICIPALITIES AND
THE INDIANA MUNICIPAL LAWYERS ASSOCIATION
Jo Angela Woods
Indiana Association of Cities and Towns d/b/a Accelerate Indiana Municipalities
Indianapolis, Indiana

Donald E. Morgan
Office of Corporation Counsel
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
INDIANA TRIAL LAWYERS ASSOCIATION
Joseph N. Williams
James A. Piatt
Anne M. Lowe
Riley Williams & Piatt, LLC
Indianapolis, Indiana