## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 10:19 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Craig R. Karpe
Karpe Litigation Group
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Robert T. Keen, Jr.
William A. Ramsey
Barrett McNagny LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Sarah Nickolson, et al., *Appellants-Plaintiffs,* <br><br> v. <br><br> Tammie Freed, *Appellee-Defendant.* | August 31, 2020 <br><br> Court of Appeals Case No. 20A-CT-1046 <br><br> Appeal from the DeKalb Superior Court <br><br> The Honorable Kevin P. Wallace, Judge <br><br> Trial Court Cause No. 17D01-1705-CT-15 |

**Bailey, Judge.**

# Case Summary

[1] A vehicle driven by Mataya Nickolson ("Mataya") collided with a public school bus driven by Tammy Freed ("Freed"). Mataya and her parents, Sarah Nickolson and Terry Nickolson (at times collectively referred to as "the Nickolsons"), brought a negligence claim against Freed in her individual capacity. The trial court granted Freed summary judgment on immunity grounds and the Nickolsons now appeal. They present the sole restated and consolidated issue of whether summary judgment was improvidently granted. We affirm.

# Facts and Procedural History

[2] In 2016, Freed was employed by Hamilton Community Schools in Dekalb County as a school bus driver. Freed was paid on a per diem basis. Her primary duty was to transport students, but she had incidental duties such as participating in safety training, cleaning her bus, and presenting the bus for mandatory State of Indiana inspections. Freed's route began within two miles of her residence, and she was authorized to take the bus home.

[3] On May 11, 2016, Freed's supervisor, John Dutton ("Dutton"), instructed her to drive her bus, in a clean condition, to an inspection site. Freed completed her morning route, and briefly stopped by her residence where she checked the condition of the bus and used her garage bathroom. Freed, driving the bus, exited her driveway onto County Road 71 at approximately 7:45 a.m.

[4] When Freed was "partially into the road with the front of the bus," she saw a vehicle approaching. (Appellee App. Vol. I, pg. 64.) Freed moved her bus into her lane "as far as [she] could" but then "felt the impact." (*Id.* at 65.) Mataya's vehicle struck the rear of the bus, at a speed estimated by an accident reconstructionist to be sixty-nine miles per hour. Mataya was injured and lacks any recollection of the accident details.

[5] On May 5, 2017, the Nickolsons filed a complaint against Freed, individually, alleging that she had negligently operated the bus and caused injury to Mataya. The Nickolsons made no allegation that Freed had been acting outside the scope of her employment and did not include the school corporation as a defendant. Freed filed her answer and asserted as an affirmative defense that she had immunity afforded a governmental employee pursuant to Indiana Code Section 34-13-3-5 of the Indiana Tort Claims Act ("ITCA"). Freed averred that she had been acting within the scope of her employment with Hamilton Community Schools at the time of the collision.

[6] On December 12, 2017, Freed filed a motion for summary judgment, which the trial court denied. Freed then unsuccessfully pursued an interlocutory appeal. On March 6, 2020, Freed again requested summary judgment in her favor, directing the trial court's attention to a recent Indiana Supreme Court decision addressing government employee immunity.[1] On April 16, 2020, the trial court

---

[1] *See Burton v. Benner*, 140 N.E.3d 848 (Ind. 2020).

granted Freed summary judgment upon the Nickolsons' negligence claim. The Nickolsons appeal.

# Discussion and Decision

## Standard of Review

"The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 330 (Ind. Ct. App. 2006). We review the trial court's grant of summary judgment under a well-settled standard:

> The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Reed v. Reed*, 980 N.E.2d 277, 285 (Ind. 2012). Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubt as to any facts or inferences to be drawn therefrom must be resolved in favor of the non-moving party. *Id.* Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows there is no genuine issue of material fact and that the moving party deserves judgment as a matter of law. *Freidline v. Shelby Ins. Co.*, 774 N.E.3d 37, 39 (Ind. 2002).

*Goodwin v. Yeakle's Sports Bar & Grill, Inc.*, 62 N.E.3d 384, 386 (Ind. 2016).

# Analysis

[8] The Nickolsons argue that the trial court misconstrued the law and Freed is subject to personal liability because of the "coming and going [to work] rule." Appellant's Brief at 14. "The common law rule in this state is that travel to and from work is not considered activity within the scope of employment so as to hold the employer liable for injury caused by an employee's negligence." *Dillman v. Great Dane Trailers, Inc.*, 649 N.E.2d 665, 667 (Ind. Ct. App. 1995). The Nickolsons describe Freed's activities on the morning of the collision as her driving the morning route, going home to take a break, and then leaving for work.

[9] When deposed, Freed testified that, with employer permission, she typically drove her bus home between morning and afternoon routes, and again after completing the afternoon route. She testified that, on the day of the accident in particular, she drove the bus back home, looked underneath it to check for mud and determine if it needed additional cleaning, decided no further cleaning was necessary, took a bathroom break, and then started driving to the bus inspection site. Dutton was also deposed, and he confirmed that Freed had been instructed to bring the bus, in a clean condition, in for an inspection on that day. He testified that he had not specifically instructed her to clean the bus at her home, but "it made sense to me that she do that, since it's right on her way to, almost to [the town of] Butler." (App. Vol. II, pg. 115.) He also explained "they took their buses home anyway" because "their routes start right where

they live." (*Id.*)  The school corporation maintained a cleaning area but not garage facilities for its buses.

[10] It is undisputed that Freed had been assigned the express duty of driving the bus to an inspection site.  She was performing this express duty at the time of the accident.  Because Freed was required to make the bus available for inspection, she was not simply "on her way" to work.  The uncontroverted facts do not fit within the "coming and going" rule and, moreover, a plaintiff is limited in bringing suit against a government employee by certain provisions of the ITCA.  The common law rule lacks application here.

[11] The ITCA, Indiana Code section 34–13–3–1 *et. Seq.*, governs lawsuits against political subdivisions and their employees.  "Among other things the statute provides substantial immunity for conduct within the scope of the employee's employment." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003).  Immunity assumes negligence but then denies liability.  *Id.*

[12] In relevant part, Indiana Code Section 34-13-3-5 provides:

> (a) Civil actions relating to acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may be brought only against the board, the committee, the commission, the authority, or the other instrumentality of a governmental entity.  A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member

was acting within the scope of the member's employment. For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

(b) A judgment rendered with respect to or a settlement made by a governmental entity bars an action by the claimant against an employee, including a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity, whose conduct gave rise to the claim resulting in that judgment or settlement. A lawsuit alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally. However, if the governmental entity answers that the employee acted outside the scope of the employee's employment, the plaintiff may amend the complaint and sue the employee personally. An amendment to the complaint by the plaintiff under this subsection must be filed not later than one hundred eighty (180) days from the date the answer was filed and may be filed notwithstanding the fact that the statute of limitations has run.

(c) A lawsuit filed against an employee personally must allege that an act or omission of the employee that causes a loss is:

(1) criminal;

(2) clearly outside the scope of the employee's employment;

(3) malicious;

(4) willful and wanton; or

(5) calculated to benefit the employee personally.

The complaint must contain a reasonable factual basis supporting the allegations.

[13] In finding Freed immune from a personal lawsuit and granting her summary judgment, the trial court relied upon *Burton, supra.* Like Freed, the defendant in *Burton* raised the affirmative defense of government employee immunity for conduct not "clearly outside the scope of the employee's employment." I.C. § 34-13-3-5(c)(2). In *Burton*, the Indiana Supreme Court recognized that "[c]ertain negligent acts or omissions on the part of a government employee have the potential to remove the shield of respondeat superior and expose the employee to personal liability." 140 N.E.3d at 849. One of the "handful of well-delineated pathways to accomplish this task" is to show that the employee's act or omission was "clearly outside the scope of the employee's employment." *Id.* at 850 (citing I.C. § 34-13-3-5(c)).

[14] The plaintiff Bryce Burton attempted to sue Indiana State Trooper Martin Benner ("Trooper Benner") in his personal capacity after the two were involved in an accident in rural Benton County. *See id.* At the time of the accident, Trooper Benner was off duty and headed to his son's ballgame but was operating his state issued police commission as allowed under State Police policy. *See id.* Arguing that he was acting within the scope of his employment at the time of the accident, Benner sought summary judgment on whether he

could be held personally liable for any damages that flowed from the incident. The trial court awarded summary judgment in favor of Benner because though off duty, Benner was otherwise in substantial compliance with State Police policy in operating his commission and was therefore not clearly outside the scope of his employment. *Id.* The Court of Appeals reversed, opining that reasonable minds could disagree whether the trooper was outside the scope of his employment and summary judgment was thus inappropriate. *Id.* at 851. The Indiana Supreme Court granted transfer and found that, despite "some evidence that Trooper Benner was not in strict compliance with State Police policy at the time of the accident," such was insufficient to place him "clearly outside" the scope of his employment. *Id.* Accordingly, the grant of summary judgment to Trooper Brenner was affirmed. *Id.*

[15] In reaching its decision, the Court discussed the availability of Trooper Benner's affirmative defense under the ITCA:

> The ITCA "governs lawsuits against political subdivisions and their employees." *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003); Ind. Code § 34-13-3-1 *et. Seq.* The statute sets forth certain parameters to determine liability for negligent acts or omissions on the part of government employees and "provides substantial immunity for conduct within the scope of the employee's employment." *Id.* "The purpose of immunity is to ensure that public employees can exercise their independent judgment necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 452 (Ind. 2000) (citation omitted). Relevant to the present case, "A lawsuit filed against

an employee personally must allege that an act or omission of the employee that causes a loss is ... *clearly* outside the scope of the employee's employment." Ind. Code § 34-13-3-5(c)(2) (emphasis added.)

Generally speaking, "whether an employee's actions were within the scope of employment is a question of fact to be determined by the factfinder." *Knighten v. East Chicago Housing Authority*, 45 N.E.3d 788, 794 (Ind. 2015) (citation omitted). When the facts are undisputed and "would not allow a jury to find that the tortious acts were within the scope of employment," however, a court may conclude as a matter of law that the acts were not in the scope of employment. *Cox v. Evansville*, 107 N.E.3d 453, 460 (Ind. 2018).

Under the doctrine of respondeat superior, an employee's act or omission falls within the scope of employment if the injurious behavior is incidental to authorized conduct or furthers the employer's business to an appreciable extent. *Knighten*, 45 N.E.3d at 792 (citation omitted). Conversely, "an employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer." *Id.* (quoting *Barnett v. Clark*, 889 N.E.2d 281, 284 (Ind. 2008)). But "an employee's wrongful act may still fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business, even if the act was predominantly motivated by an intention to benefit the employee himself." *Id.* Ultimately, we have found that "the scope of employment encompasses the activities that the employer delegates to employees or authorizes employees to do, plus employees' acts that naturally or predictably arise from those activities." *Cox*, 107 N.E.3d at 461.

140 N.E.3d at 852.

[16]     The Court acknowledged the absence of a "precise formula" for acting "outside the scope of employment" but observed that Trooper Benner's "conduct [was] of the same general nature as that authorized, or incidental to the conduct authorized by the State Police." *Id.* at 853. There existed no genuine issue of material fact precluding summary judgment. *Id.*

[17]     The Nickolsons argue that *Burton* is factually distinguishable in that Trooper Benner had "ongoing" duties pursuant to a "written policy promulgated by the Indiana State Police." Appellant's Brief at 21. But it is uncontroverted that Freed was acting in accordance with her employer's instruction to get her bus to an inspection site; statutory immunity for a government employee is not limited to acts performed pursuant to written directives. The Nickolsons failed to allege that Freed was acting clearly outside the scope of her employment and, once Freed designated materials to show that she was acting in the scope of her employment, failed to designate any evidence to the contrary.

[18]     Finally, the Nickolsons argue that summary judgment is inappropriate because of a factual dispute. Specifically, the Nickolsons claim that Freed's credibility regarding her cell phone usage has been called into question. According to the Nickolsons, "[Freed's] cellular phone records showed she did send a text during the period she claimed to be home cleaning her bus. Moreover, the text appears to have occurred on or about the exact time of her collision with Mataya." Appellant's Brief at 18.

[19] When deposed, Freed denied using her cell phone at the time of the accident; she stated that it was in her purse. This testimony was uncontroverted. However, Freed did not report having sent a text message at 7:44 a.m., as reflected in AT&T records.[2] A fact is material if its resolution would affect the outcome of the case. *Hughley v. State*, 15 N.E.3d 1000, 2003 (Ind. 2014). An issue is genuine if a trier of fact is required to resolve the parties' differing accounts of the truth or if the undisputed material facts support conflicting reasonable inferences. *Id.*

[20] The Indiana State Police Report indicated that the accident between Mataya's vehicle and Freed's bus occurred at 7:45 a.m. Freed's cell phone usage at 7:44 a.m. has temporal proximity, but no alleged connection to the accident. The Nickolsons did not aver in their Complaint that Freed was engaging in willful and wanton behavior. In response to Freed's testimony that her phone was in her purse at the time of the accident, the Nickolsons designated no evidence tending to show that Freed was then using her phone. They do not argue that phone usage was a contributing factor to the accident. The suggested relevance is that Freed was taking a break instead of cleaning her bus as directed.

---

[2] At her deposition, Freed was asked if she made calls when she was at home and she responded that she had not. Freed was then asked, "didn't do anything," and she responded "no." (App. Vol. II, pg. 75.) The telephone records indicated use of the cell phone for an upload and download (possibly consistent with an internet search) and a text message.

[21] Assuming its relevance here, *Burton* offers guidance on the imposition of personal liability when an employee is not fully compliant with employer policies:

> To the extent Burton argues Trooper Benner's violation of traffic laws exposed him to personal liability under the ITCA, we disagree. True, State Police policy expressly prohibits violation of traffic laws, but in our view, the violation in this case did not move Benner "clearly outside" the scope of his employment. Recall that the scope of employment "may include acts that the employer expressly forbids" or "that violate the employer's rules, orders, or instruction." *Cox*, 107 N.E.3d at 461. While State Police policy forbids speeding in non-emergency situations, speeding could "naturally or predictably arise" from driving a commission even while off duty. *See id*. at 461-62. The "clearly outside" standard set forth in Indiana Code section 34-13-3-5(c)(2) represents a high bar and, in this case, we are not convinced that bar has been cleared.

140 N.E.3d at 853. Here, the record discloses nothing taking Freed clearly outside the scope of her employment at the time of the accident.

# Conclusion

[22] Because Freed was not acting clearly outside the scope of her employment at the time of the collision, she is entitled to government employee immunity. The trial court properly granted summary judgment.

[23] Affirmed.

Vaidik, J., and Baker, Sr. J., concur.