# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 24 2020, 7:30 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael C. Cooley
Eric N. Allen
Allen Wellman McNew Harvey, LLP
Greenfield, Indiana

ATTORNEYS FOR APPELLEE

Christopher J. Evans
Dollard Evans Whalin LLP
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Estate of Alex Lee Harter by Jennifer Ann Harter, Personal Representative, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> TCGC, LLC, <br><br> *Appellee-Defendant.* | November 24, 2020 <br><br> Court of Appeals Case No. 20A-CC-541 <br><br> Appeal from the Henry Circuit Court <br><br> The Honorable Bob A. Witham, Judge <br><br> Trial Court Cause No. 33C01-1905-CC-335 |

**Pyle, Judge.**

# Statement of the Case

[1] The Estate of Alex Lee Harter ("Decedent") by personal representative and surviving spouse, Jennifer Ann Harter ("Harter"), (collectively "the Estate") filed a complaint against TCGC, LLC ("TCGC") to collect the balance due on a loan that Decedent had made to TCGC. Following cross-motions for summary judgment, the trial court: (1) granted TCGC's motion to strike Harter's affidavit that had been offered as designated evidence; (2) granted TCGC's motion for summary judgment; and (3) denied the Estate's cross-motion for summary judgment. After the Estate filed a motion to correct error seeking to reverse the trial court's grant of summary judgment to TCGC and an affidavit in support of its motion, the trial court denied the Estate's motion to correct error and granted TCGC's motion to strike Harter's affidavit. The Estate now appeals, challenging all of these rulings. Specifically, the Estate argues that the trial court: (1) erred in its rulings on the parties' cross-motions for summary judgment; and (2) abused its discretion in its motion to correct error rulings.

[2] In regard to the trial court's summary judgment rulings, we conclude that the trial court: (1) abused its discretion by granting TCGC's motion to strike Harter's affidavit; (2) erred by granting TCGC's summary judgment motion; and (3) did not err by denying the Estate's summary judgment motion. Accordingly, we affirm in part, reverse in part, remand for further proceedings. Because neither party was entitled to summary judgment and we are remanding

for further proceedings, we conclude that the Estate's challenge to the trial court's motion to correct error rulings is moot and we need not address it.

We affirm in part, reverse in part, and remand.

## Issues

1. Whether the trial court erred in its summary judgment rulings.
2. Whether the trial court abused its discretion in its motion to correct error rulings.

## Facts

In June 2018, Decedent died, and an estate was opened and filed in Cause Number 48C03-1808-ES-384 ("the Estate Proceeding"). Prior to his death, Decedent was a member of TCGC, which is a golf course. Rick Harter ("Rick"), who was also a member of TCGC, filed a claim against the Estate in the Estate Proceeding. As part of the Estate Proceeding, the Estate apparently obtained documents from TCGC. For example, TCGC provided Harter with a copy of TCGC's 2017 tax return ("TCGC's 2017 tax return") and a document, titled Summary of Debt Outstanding, which listed TCGC's outstanding notes to various people, including Decedent ("TCGC's Summary of Debt Outstanding"). Specifically, TCGC's Summary of Debt Outstanding showed

that, as of January 1, 2019, TCGC had an outstanding amount of $43,138.64 due to Decedent.[1]

[5] On May 29, 2019, the Estate filed a "Complaint on Debt" against TCGC to collect the balance due on the loan that Decedent had made to TCGC. (App. Vol. 2 at 11). The Estate alleged that "[t]he balance of the debt, as confirmed from the records of TCGC, LLC, was $43,138.64 as of January 1, 2019." (App. Vol. 2 at 11). Additionally, the Estate's complaint indicated that the Estate had made a demand for payment upon TCGC and that the debt had not been paid.

[6] In June 2019, TCGC then filed a motion to dismiss pursuant to Trial Rule 12(B)(6). TCGC argued that the Estate's complaint should be dismissed because the Estate had failed to attach a written document or affidavit of debt to the complaint. The trial court denied TCGC's motion.

[7] TCGC simultaneously filed an answer and a motion for summary judgment in July 2019. In its answer, TCGC neither admitted nor denied the Estate's assertions that Decedent had loaned money to TCGC and that the balance due pursuant to its records was $43,138.64. Instead, TCGC stated that "[t]here [wa]s insufficient information or belief to admit or deny" those allegations. (App. Vol. 2 at 13). In its answer, TCGC also asserted a counterclaim, in which it seemed to acknowledge that there had been a loan but alleged that

---

[1] TCGC's Summary of Debt Outstanding showed that the original outstanding amount for Decedent was $44,109.02 and that the original outstanding amount for all the people listed on the document was $200,242.08.

there was "no current sums due" to the Estate from TCGC. (App. Vol. 2 at 14). As part of its counterclaim, TCGC sought damages and attorney fees if the Estate did not withdraw its complaint.

[8] In TCGC's summary judgment motion, it stated that it knew of "no obligation . . . currently due and owing" to the Estate. (App. Vol. 2 at 16). TCGC also asserted that the obligation alleged by the Estate was "not a promissory note or account" and that it was "not one based on upon a writing" since "no writing [had been] attached to the Complaint[.]" (App. Vol. 2 at 16). TCGC argued that the Estate would not be able to "carry [its] burden" on its claim because: (1) Harter's "testimony would be hearsay" since she was not a party to any agreement and had "no personal knowledge" of the terms of the agreement; and (2) any witnesses that the Estate "might potentially call" would not be parties to the agreement and "would be barred from testimony by lack of personal knowledge." (App. Vol. 2 at 17).

[9] TCGC's designated evidence included only one document. Specifically, TCGC designated only its "response to Discovery[.]" (App. Vol. 2 at 17). TCGC's discovery document included TCGC's responses to the Estate's request for admissions and its answers to the Estate's interrogatories. TCGC did not designate any specific response or answer. In the Estate's request for admissions, it asked TCGC to admit that, as of January 1, 2019, the outstanding balance of the debt owed by TCGC to Decedent was $43,138.64 and that TCGC's Summary of Debt Outstanding had been produced by TCGC or one of its members. TCGC responded to both requests as follows:

Deny. Defendant TCGC, LLC and its agents are disqualified witnesses under the Indiana Dead Man's Statute. Defendant's recordkeeper Steve Sheets recently passed away. Defendant does not know of any document in its possession or under its control showing any amounts currently due and owing to the [E]state or to [Decedent]. No indication has been given from [the Estate] that a debt is owed, and no affidavit has been filed. See Defendant's Motion to Dismiss.

(App. Vol. 2 at 21) (emphasis removed). TCGC also gave the same response to the Estate's request for TCGC to admit that TCGC's 2017 tax return, which TCGC had provided to the Estate, was a true and accurate copy.

[10] About one week after TCGC had filed its summary judgment motion, it then filed a supplement to the motion, in which it asked the trial court to take judicial notice of a financial declaration document that Harter had filed in a dissolution proceeding in February 2018, which was four months before Decedent had died. This document was a form setting forth only Harter's financial information for dissolution purposes; the document did not contain Decedent's financial information. TCGC asserted that the document "show[ed] no loan due from TCGC[.]" (App. Vol. 2 at 35).

[11] Thereafter, in August 2019, the Estate filed a response to TCGC's summary judgment motion and a cross-motion for summary judgment. In support of the Estate's response and motion, it designated an affidavit from Harter, TCGC's Summary of Debt Outstanding, and TCGC's 2017 tax return. In Harter's affidavit, she averred as follows:

1.  [Harter] is the surviving spouse of Alex Lee Harter, the decedent on whose behalf she brings this suit.

2.  She is the Personal Representative of the Estate of [Decedent].

3.  She has personal knowledge as to all matters set forth within this Affidavit.

4.  This Affidavit pertains to the Estate's Response to [TCGC's] Motion for Summary Judgment.

5.  I shared financial accounts and resources with Alex Harter, the decedent, during his lifetime.

6.  I manage the Estate's finances as Personal Representative.

7.  I have access to the decedent's financial accounts and personal information as Personal Representative.

8.  Through counsel in the Estate, I made a non-party request for documents from TCGC, LLC, the Defendant.

9.  Through counsel, I also requested documents from TCGC, LLC as it is the right of a[n] LLC member to obtain financial records. The financial records I received included tax returns and summaries of debts owed to the Members.

10.  One of these documents is the "TCGC, LLC Summary of Debt Outstanding", attached hereto as Exhibit 1.

11.  The document attached as Exhibit 1 was delivered to the Estate by TCGC, LLC by reason of the above-mentioned methods. The document attached as Exhibit 1 is a true and genuine copy of the document received by TCGC, LLC. This document establishes that the balance of the debt due to [Decedent] as of January 1, 2019 is $43,138.64.

12.  I also received and reviewed the TCGC, LLC Form 1065 Federal tax return, a portion of which is attached hereto as Exhibit 2.

13.  The document attached as Exhibit 2 was also delivered by TCGC, LLC through the above-mentioned methods. The document attached as Exhibit 2 is a true and genuine copy thereof.

14. The TCGC, LLC tax return corroborates loans made to the corporation by members as it reflects $200,062 on page 5, line 19a, loans from partners and partner family members.

15. The Estate has received no payments from TCGC, LLC.

(App. Vol. 2 at 51-52).

[12] The Estate argued that TCGC was not entitled to summary judgment because TCGC had not met its initial summary judgment burden. Specifically, the Estate pointed out that TCGC had generally asserted that the Estate would not be able to prove its case against TCGC and had merely challenged the admissibility of future potential witnesses' testimony.

[13] Additionally, the Estate argued it was entitled to summary judgment on its complaint on a debt claim because it could prove the required elements of: (1) the existence of a loan; (2) a promise to repay the loan; and (3) nonpayment of the loan. The Estate asserted that TCGC's Summary of Debt Outstanding reflected that there was an outstanding loan from Decedent to TCGC and further showed the amount that remained due as of January 1, 2019 and that TCGC's 2017 tax returns, which showed that loans from TCGC's members had been made to TCGC, corroborated the existence of the loan at issue. The Estate also asserted that Harter's affidavit showed that the loan remained unpaid.

[14] TCGC subsequently filed a response to the Estate's summary judgment motion and a motion to strike Harter's affidavit. TCGC argued that Harter's entire affidavit should be stricken because it was not made on personal knowledge,

had no showing that Harter was competent to testify to the matters contained therein, contained opinions or conclusions as to legal matters, and included hearsay and "highly suspect testimony[.]" (App. Vol. 2 at 62). TCGC alleged that Harter's affidavit averment that she had shared financial accounts with Decedent and her averment that she managed the Estate's finances as personal representative were "irrelevant" and should be stricken. (App. Vol. 2 at 61). TCGC also suggested that Harter's averment that she had shared financial accounts with Decedent was suspect because Harter and Decedent had a pending dissolution proceeding at the time of Decedent's death. TCGC also argued that the trial court should not consider TCGC's Summary of Debt Outstanding because it had "not [been] verified and certified by TCGC" and was "not [a] current record[]" of TCGC and that it should not consider TCGC's tax return because it made "no reference" to Decedent. (App. Vol. 2 at 61). Moreover, TCGC generally asserted that the TCGC's records attached to Harter's affidavit were hearsay.

[15] As part of TCGC's response to the Estate's cross summary judgment motion, TCGC attached an affidavit from Rick. In Rick's affidavit, he averred as follows:

> 1. [Rick Harter] has reviewed Exhibits 1 & 2 [TCGC's Summary of Debt Outstanding and TCGC's 2017 tax return] attached to the Affidavit of Jennifer Harter.
>
> 2. He makes this Affidavit from his own personal knowledge as a competent adult and as a major unit holder of TCGC, LLC.

3. Exhibits 1 & 2 attached to the Affidavit of Jennifer Harter are not current records of [TCGC] showing any current amount due [to] [Decedent] or the Estate of [Decedent] as no such amount is currently due.

(App. Vol. 2 at 66).

[16] The Estate responded to TCGC's motion to strike and argued that Harter's statements within her affidavit were relevant and made on personal knowledge. In regard to TCGC's hearsay argument, the Estate argued that the TCGC documents attached to Harter's affidavit were admissible under Evidence Rule 801(d)(2) as a statement by a party opponent. The Estate also asserted that TCGC's other arguments in support of its motion to strike went to the weight of the evidence and did not address admissibility.

[17] In October 2019, the trial court held a hearing on the cross-motions for summary judgment. Thereafter, in January 2020, the trial court issued a general order, in which it: (1) granted TCGC's motion to strike the entirety of Harter's affidavit; (2) granted TCGC's summary judgment motion; and (3) denied Harter's summary judgment motion.

[18] In February 2020, the Estate filed a motion to correct error and a supporting affidavit from Harter. The Estate's motion to correct error was based on the Estate having newly discovered evidence. Specifically, the Estate asserted that it had obtained a note purchase agreement and two promissory notes (one for $17,519.02 and the other for $15,000.00) ("the loan documents"), which had been signed by Decedent and by Rick on behalf of TCGC. In Harter's affidavit,

she stated that she was familiar with Decedent's and Rick's signatures. The Estate argued that the loan documents constituted evidence that Decedent had made loans to TCGC and that TCGC had agreed to repay Decedent. Additionally, the Estate asserted that it had also obtained a check, written from Decedent to TCGC, in the amount of $15,000.00. The check and the loan documents were dated July 1, 2015 and were attached to Harter's affidavit.[2] The Estate indicated that Decedent had "comingled in an unorganized manner" his TCGC records with his old farming records and that Harter had discovered the loan documents when she had looked in Decedent's farming records. (App. Vol. 2 at 76). The Estate asserted that the loan documents were consistent with TCGC's Summary of Debt Outstanding and showed a similar amount due on the loan. Additionally, the Estate argued that the loan documents also showed that "TCGC's representations [made in summary judgment] that no debt is owed to Decedent are all patently false[.]" (App. Vol. 2 at 77). In Harter's affidavit, she averred that she had personal knowledge of the matters within her affidavit and that the factual representations contained in the motion to correct error and restated in her affidavit were true and correct. In her affidavit, she explained how she had discovered the loan documents and the check that had been mixed with Decedent's farm documents while obtaining records in the Estate Proceeding.

---

[2] The Estate initially did not attach the check to the affidavit, but it then tendered the missing exhibit once it realized its mistake.

[19] Thereafter, TCGC filed a response to the Estate's motion and a motion to strike Harter's affidavit in its entirety. In TCGC's response, it argued that the Estate had failed to show that it had used due diligence in discovering the documents that were in Harter's possession. TCGC also asserted that the trial court should deny the Estate's motion to correct error because there were "no current funds known to be owed to Decedent or his Estate" and because the Estate had a "duty to raise a genuine issue in avoidance" of TCGC's affirmative defense of the statute of limitations. (App. Vol. 2 at 136, 137). In TCGC's motion to strike Harter's affidavit, it suggested that Harter had made a "highly suspect" assertion by averring that the factual representations contained in the motion to correct error were true and correct and suggested that it was "unlikely that a non-lawyer would be personally aware" of the factual representations. (App. Vol. 2 at 139).

[20] The Estate requested the trial court to hold a hearing on its motion, and TCGC objected to having a hearing. Without holding a hearing, the trial court issued an order granting TCGC's motion to strike the entirety of Harter's affidavit and denying the Estate's motion to correct error. The Estate now appeals.

## Decision

[21] On appeal, the Estate challenges: (1) the trial court's summary judgment rulings; and (2) the trial court's motion to correct error rulings. Specifically, the Estate argues that the trial court: (1) erred in its rulings on the parties' cross-motions for summary judgment and in its ruling on TCGC's motion to strike;

and (2) abused its discretion by denying the Estate's motion to correct error and by granting TCGC's motion to strike.

## 1. Summary Judgment Rulings

Before we address the Estate's arguments regarding the propriety of the cross-motions for summary judgment, we first address the Estate's argument that the trial court abused its discretion by granting TCGC's motion to strike Harter's affidavit, which she had designated as evidentiary material in opposition to TCGC's summary judgment motion and in support of the Estate's cross-motion for summary judgment.

The trial court has broad discretion in ruling on the admissibility of evidence, and this discretion extends to rulings on motions to strike affidavits on the grounds that they fail to comply with the summary judgment rules. *Price v. Freeland*, 832 N.E.2d 1036, 1039 (Ind. Ct. App. 2005). Indiana Trial Rule 56(E) provides, in relevant part, that:

> Supporting and opposing affidavits [in a summary judgment proceeding] shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.

[24] In response to TCGC's summary judgment motion and in support of the Estate's cross-motion for summary judgment, the Estate designated Harter's affidavit, to which she attached TCGC's Summary of Debt Outstanding and TCGC's 2017 tax return. In Harter's affidavit, she explained that she had received these documents from TCGC as part of the Estate Proceeding. When the trial court granted TCGC's motion to strike Harter's entire affidavit, the court stated that it did so "for the reasons outlined in [TCGC's] Motion." (App. Vol. 2 at 8).

[25] On appeal, the Estate argues that the trial court abused its discretion by striking Harter's affidavit because the statements Harter made therein were relevant and based on personal knowledge and because the documents attached thereto were admissible under Evidence Rule 801(d)(2) as a statement by a party opponent.

[26] We agree that the trial court abused its discretion by striking Harter's affidavit. Harter specifically averred that the statements contained in her affidavit were based on her personal knowledge, and the statements therein explained Harter relationship to the Estate Proceeding and how she had obtained TCGC's Summary of Debt Outstanding and TCGC's 2017 tax return that she had attached to her affidavit. Specifically, these documents were obtained during the discovery process in the Estate Proceeding. Harter's statements are relevant to establishing the admissibility of the documents upon which she relied in this summary judgment proceeding and that relate to the Estate's claim against TCGC. *See Morris v. Crain*, 71 N.E.3d 871, 878 (Ind. Ct. App. 2017) (explaining that "[r]elevant evidence is defined as evidence having any tendency

to make the existence of any pertinent fact more probable or less probable than it would be without the evidence"). *See also* Ind. Evidence Rule 401. Furthermore, the documents attached to Harter's affidavit were admissible pursuant to Evidence Rule 801(d)(2). "[A] statement is not hearsay if it is a statement made by an opposing party that is offered into evidence against him." *Morris*, 71 N.E.3d at 878 (citing Ind. Evidence Rule 801(d)(2)(A)). Accordingly, the trial court abused its discretion by striking Harter's affidavit.

[27] Next, we turn to the Estate's arguments that the trial court erred by granting TCGC's summary judgment motion and by denying the Estate's cross-motion for summary judgment. We will separately review each motion.

[28] Our standard of review for summary judgment cases is well-settled. When we review a trial court's grant of a motion for summary judgment, our standard of review is the same as it is for the trial court. *Knighten v. E. Chi. Hous. Auth.,* 45 N.E.3d 788, 791 (Ind. 2015). Summary judgment is appropriate only where the moving party has shown that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). "Indiana's distinctive summary judgment standard imposes a heavy factual burden on the movant to demonstrate the absence of any genuine issue of material fact on at least one element of the [non-movant's] claim." *Siner v. Kindred Hosp. Ltd. P'ship*, 51 N.E.3d 1184, 1187 (Ind. 2016) (citing *Hughley,* 15 N.E.3d at 1003). Only after the moving party carries its burden is the non-moving party then required to present evidence establishing the existence of a genuine issue of material fact. *Knighten*, 45 N.E.3d at 791. When

deciding whether summary judgment is proper, we consider only the evidence the parties specifically designated to the trial court. *Siner*, 51 N.E.3d at 1188 (citing Ind. Trial Rule 56(C)). "The fact that the parties have filed cross-motions for summary judgment does not alter our standard for review, as we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law." *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012).

[29] Summary judgment is a "high bar" for the moving party to clear in Indiana. *Hughley*, 15 N.E.3d at 1004. We must carefully review a decision on summary judgment to ensure a party is not improperly denied his day in court. *Mangold ex rel. Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 974 (Ind. 2001). "Summary judgment is a lethal weapon and courts must be mindful of its aims and targets and beware of over-kill in its use." *Southport Little League v. Vaughan*, 734 N.E.2d 261, 269 (Ind. Ct. App. 2000), *trans. denied*. Indeed, "Indiana consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Hughley*, 15 N.E.3d at 1004.

[30] In its complaint, the Estate alleged that TCGC owed the balance of a debt to Decedent. Specifically, the Estate alleged that that Decedent had loaned money to TCGC and that TCGC owed $43,138.64 as of January 1, 2019. The Estate alleges that its claim required it to show the existence of a loan, a promise to repay the loan, and nonpayment of the loan. In TCGC's summary judgment motion, it did not dispute that Decedent had loaned money to TCGC

or that it had promised to repay. Instead, TCGC stated that it knew of "no obligation . . . currently due and owing" to Decedent or the Estate. (App. Vol. 2 at 16). TCGC's designated evidence, which consisted of a discovery document that included TCGC's responses to the Estate's request for admissions and its answers to the Estate's interrogatories, also generally asserted that TCGC did "not know of any document in its possession . . . or under its control showing any amounts currently due and owing to the [E]state or to [Decedent]." (App. Vol. 2 at 21) (emphasis removed). TCGC argued that the Estate would not be able to "carry [its] burden" on its debt claim because: (1) Harter's "testimony would be hearsay" since she was not a party to any agreement and had "no personal knowledge" of the terms of the agreement; and (2) any witnesses that the Estate "might potentially call" would not be parties to the agreement and "would be barred from testimony by lack of personal knowledge." (App. Vol. 2 at 17).

[31] In so arguing, TCGC did not meet its initial summary judgment burden of proving an absence of any genuine issue of material fact or of affirmatively negating at least one element with respect to the Estate's claim. A defendant, as a summary judgment movant, does meet its summary judgment burden by arguing that the plaintiff will not be able to prove its claim. "Merely alleging that the plaintiff has failed to produce evidence on each element of [its cause of action against the defendant] is insufficient to entitle the defendant to summary judgment under Indiana law." *Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.,* 644 N.E.2d 118, 123 (Ind. 1994), *reh'g denied*. Moreover, "[u]nder Indiana's

[summary judgment] standard, the party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence." *Id.* TCGC's designated evidence did not affirmatively negate the nonpayment element. TCGC did not provide designated evidence to affirmatively show that it had completely repaid the loan such that the debt no longer existed. Summary judgment should not be granted where material facts conflict or conflicting inferences are possible. *See Hughley*, 15 N.E.3d at 1003-04 (explaining that "summary judgment is not a summary trial"). Because TCGC did not designate evidence to affirmatively negate an element of the Estate's claim and because it alleged that the Estate could not produce evidence of its claim, the trial court erred by granting summary judgment to TCGC.[3] Accordingly, we reverse the trial court's grant of summary judgment to TCGC and remand for further proceedings.

[32] Turning to the Estate's summary judgment argument, we conclude that the Estate was also not entitled to summary judgment. In the Estate's cross-motion

---

[3] Even if TCGC's designated evidence would be considered sufficient to meet its initial summary judgment burden, the Estate designated evidence that showed that there remained a genuine issue of fact regarding nonpayment of the loan. Additionally, we reject TCGC's argument that the trial court properly granted TCGC's summary judgment motion because the Estate failed to meet its burden of refuting TCGC's affirmative defenses raised in its answer. TCGC made no affirmative defense arguments in its summary judgment motion, and even if it had, it would have been TCGC's burden to show that it had a "factually unchallenged affirmative defense that bars the plaintiff's claim." *See Sheets v. Birky*, 54 N.E.3d 1064, 1069 (Ind. Ct. App. 2016) (explaining that when a defendant is the moving party in a summary judgment proceeding, the defendant has the burden of showing either that the undisputed facts negate at least one element of the plaintiff's cause of action or that the defendant has a factually unchallenged affirmative defense that bars the plaintiff's claim).

for summary judgment, it argued that its designated evidence of Harter's affidavit, which included TCGC's Summary of Debt Outstanding and TCGC's 2017 tax return, showed that Decedent had made a loan to TCGC, that the remaining balance as of January 1, 2019 was $43,138.64, and that the loan remained unpaid. In response to the Estate's motion, TCGC designated Rick's affidavit in which he averred that the TCGC documents attached to Harter's affidavit were not "current" records and that there was no amount "currently due." (App. Vol. 2 at 66).[4] Because there remains a genuine issue of material fact regarding repayment of the loan, the trial court did not abuse its discretion by denying the Estate's cross-motion for summary judgment. Accordingly, we affirm the trial court's denial of the Estate's summary judgment motion. Because neither party was entitled to summary judgment, we remand to the trial court for further proceedings.

**2. Motion to Correct Error Rulings**

[33] Lastly, the Estate challenges the trial court's rulings made in conjunction with the Estate's motion to correct error. Specifically, the Estate argues that the trial court abused its discretion by denying its motion to correct error and by striking the Estate's affidavit attached thereto.

---

[4] The Estate suggests that the trial court should have struck Rick's affidavit, but the Estate did not file a motion to strike.

The Estate filed its motion to correct error, alleging that it had newly discovered evidence and seeking to have the trial court reverse its grant of summary judgment to TCGC. Because we have reversed the trial court's grant of summary judgment to TCGC and are remanding for further proceedings, we need not address the Estate's challenge to the trial court's motion to correct error rulings. "[W]hen we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination where absolutely no change in the status quo will result." *Sainvil v. State*, 51 N.E.3d 337, 342 (Ind. Ct. App. 2016) (citations omitted), *trans denied*. Accordingly, we remand to the trial court for further proceedings.

Affirmed in part, reversed in part, and remanded.

Kirsch, J., and Tavitas, J., concur.